### CHARLES A. MacDONALD *et al.*
### *v.*
### MARJORIE H. CROSBY.

*Opinion filed October 24, 1901.*

1. EVIDENCE—*what evidence is not hearsay.* In an action to recover money loaned to a partnership by the wife of one of the partners, conversations in the presence of a third party between the husband and wife with reference to her making the loan are not hearsay evidence, but direct evidence tending to prove the contract, and are competent if the husband was acting within the scope of the partnership in negotiating the loan.

2. PARTNERSHIP—*when partner's promise to re-pay loan is binding on firm.* A partner's promise to re-pay a loan is binding upon the firm where his acts were performed with the knowledge and sanction of the other members of the firm and the money was received by the partnership.

3. STATUTE OF FRAUDS—*Statute of Frauds is no defense to executed contract.* The Statute of Frauds, requiring promises not to be performed within one year to be in writing, is no defense where the contract declared upon has been fully performed by plaintiff and nothing remains to be done by defendants but to pay the money.

4. PLEADING—*when plea in action for money loaned is demurrable.* If the declaration in an action against a partnership for money loaned alleges a promise by the firm to the plaintiff to re-pay, a plea alleging that whatever promise was made was a promise to answer for the debt of another is not responsive to the allegations of the declaration and is open to demurrer.

*MacDonald* v. *Crosby,* 84 Ill. App. 662, affirmed.

Writ of Error to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. Farlin Q. Ball, Judge, presiding.

· Peck, Miller & Starr, and Charles E. Kremer, for plaintiffs in error.

William E. Hughes, for defendant in error.

Mr. Chief Justice Wilkin delivered the opinion of the court:

Marjorie H. Crosby, as plaintiff, began this suit in assumpsit in the superior court of Cook county, against plaintiffs in error, to recover a sum of money due to her from them, as surviving partners of the firm of Crosby, MacDonald & Co. Her cause of action was stated in several ways in her declaration, the substance being, first, that she loaned the firm $14,000 on December 2, 1891, due in three years, and that the defendants failed to pay her; second, that on that date she mortgaged certain property belonging to her and thus raised the sum of $14,000, which she paid to the said firm in consideration that they would pay off the said mortgage when due, and that they failed to make such payment and she was compelled to do so. The third count is substantially the same as the second. The declaration also contained the common counts. Defendants pleaded, first, non-assumpsit; second and third, that the plaintiff's cause of action is barred by the Statute of Frauds, it being based upon an agreement not to be performed within one year of the making thereof, and is not evidenced by any note or memorandum signed as required by the statute, and that the said promise, if one was made, was to answer for the debt of Mr. Crosby. A demurrer was sustained to the special pleas, and defendants elected to stand by them. The cause was tried before the court without a jury, resulting in a finding and judgment for the plaintiff for $17,741.55. Defendants

appealed to the Appellate Court for the First District, where the judgment below was affirmed, and they now bring the cause to this court, as plaintiffs in error, to reverse the judgments below.

By some arrangement between counsel, without the approval of the court, two sets of briefs and arguments have been filed in this case. The result has been, not only to confuse the argument of the case, but to impose additional labor upon the court. We have, however, given careful consideration to both arguments, and have reached the conclusion that no reversible error was committed by the trial court.

It was not denied that Mrs. Crosby borrowed the money and gave her note and mortgage, as alleged, and that the firm of Crosby, MacDonald & Co. received the money; but the defendants denied that the money was borrowed by her at their request or that they promised to pay the same or to indemnify her, their contention being, that her husband, Thomas G. Crosby, then a member of the firm, had overdrawn his account at that time in an amount equal to or in excess of the amount so received by the firm, and that the amount so borrowed by his wife was paid to him, and by him to the firm, to make up his overdraft, and was credited to him in his account with the firm. In other words, the real question on the trial was whether she borrowed the money for and delivered it to the firm upon their request and promise to repay it, or whether she borrowed it for her husband and delivered it to him. This question of fact was fully contested both in the superior and Appellate Courts, and it was found that she loaned the money, not to her husband individually, but to the firm; and unless a wrong conclusion was reached because of an erroneous decision upon some question of law, the judgment is conclusive.

It is first insisted that the trial court erred in not holding that a letter of December 2, 1891, signed by the firm, addressed to Mrs. Crosby, contained the whole con-

tract of the parties. At the close of the evidence defend-
ants offered to the court a proposition to be held as the
law of the case, as follows:

6. "That said letter is the only agreement or promise
on the part of the said firm of Crosby, MacDonald & Co.,
or the surviving partners thereof, tending to show any
promise to pay to the plaintiff the said sum of $14,000
borrowed from her by the said Thomas G. Crosby, and
that said letter was not and is not a promise by the said
Crosby, MacDonald & Co., or the survivors thereof, to
pay to the said plaintiff the said sum of $14,000 as an
indebtedness of said firm, and, therefore, the plaintiff
cannot recover said sum against the said defendants, or
either of them."

The letter is as follows:

*"Mrs. Majorie H. Crosby, City:*          "Chicago, *Dec. 2, 1891.*

"Dear Madam—Regarding the mortgage of $14,000 on house
and land at Lake View, the proceeds of which are to go into
the hands of this firm to Capt. Crosby's credit, we beg to say
that it is understood and agreed that Capt. Crosby's interest
as a member of the firm remains unaffected by his illness; and
he also wishes us to say to you, that even in case of his death
his interest shall remain until the above mortgage be paid off.

  "Yours faithfully,      Crosby, MacDonald & Co."

This letter, when considered in connection with other
evidence offered on behalf of plaintiff, does not bear the
construction sought to be placed upon it by plaintiffs in
error, nor does it purport to be the whole contract under
which Mrs. Crosby claims to have made the loan, and
this proposition was properly refused.

Upon the trial the witness H. M. Robinson was asked,
"Now, what do you know of Capt. Crosby investing the
profits of the firm that he drew out of it, in real estate,
in the name of Mrs. Crosby, between the years 1886, and
December, 1891?" To that question an objection was in-
terposed and sustained by the court, and this is assigned
for error. We are unable to see upon what principle such
testimony was competent. The mere fact that plaintiff's

husband may have invested his part of the profits of the firm between the years 1886, and December, 1891, in real estate, certainly could not prevent the plaintiff from recovering in this action. It will be seen that the question is not limited to the real estate claimed by plaintiff to have been mortgaged by her, nor is there any suggestion by counsel that the investment of money between those years, even if in the real estate mortgaged in the name of Mrs. Crosby, would make it any less her separate property. It is true, in actions of assumpsit equitable defenses may be interposed; but there is nothing here to show that the question propounded to the witness tended in any way to prove an equitable defense. There is no claim that the property was placed in the wife's name fraudulently.

The foregoing are the only points raised in the first brief of plaintiffs in error filed here.

In the additional arguments it is contended that the testimony of Nellie Strong as to the transaction between Thomas G. Crosby and his wife, with reference to the making of this loan, was incompetent,—first, because it was hearsay; and second, because the statements of Mr. Crosby to his wife in negotiating this loan were beyond his power to make, as a member of the partnership. The declaration charges that plaintiff was induced to mortgage her own property to raise money for the firm. Nellie Strong says: "I heard talk between Thomas G. Crosby and his wife prior to December 2, 1891, about borrowing money. * * * He said the firm was to receive the money, and that the firm could pay it off in one year. This was in the fall of 1891. The first conversation was two or three days before the loan was made." On cross-examination she says: "I heard the first conversation between him and Mrs. Crosby about this loan when they first started to get it. It was in the fall of 1891. We were at the breakfast table in the first place, upon Wilson avenue. When he came down to the table she ap-

parently was going on with the conversation that they had had before, and he says, 'You will have to get $10,000 on the Graceland.'   *   *   *   It was shortly before the mortgage was given,—four or five days, I should think. He addressed himself to Mrs. Crosby.   He says once to her, 'You need not be afraid to loan this, because the firm can pay it off.'"   This evidence was introduced to show what the negotiations were between Mr. Crosby, who, it is insisted, was acting for his firm, and Mrs. Crosby, from whom the money was to be obtained.   What was said between them in arriving at an understanding and agreement as to the making of the loan, constituted, in part, the contract between the parties which is the basis of this action of assumpsit.   The testimony of Nellie Strong to the foregoing conversations is not hearsay, but it is direct evidence tending to prove the contract,— *i. e.*, what was said by the parties on either side of the transaction when the loan was being negotiated.   Whether this witness' testimony is incompetent because the statements of Mr. Crosby were unauthorized depends upon whether he was acting within the scope of the partnership in undertaking to negotiate this loan.   The scope of the business of partnership does not appear to have been so limited that the borrowing of money was beyond the purpose of the partnership.

It is said that Nellie Strong did not understand the conversations between Mr. Crosby and his wife because of an impediment in the speech of Mr. Crosby, and that her knowledge of what was said was from Mrs. Crosby alone, who detailed the conversation to her.   But this finds no substantial support in the evidence.   The witness says that as to one statement she did not quite understand, and Mrs. Crosby repeated it to her; but she also says this was in the immediate presence of both Mr. and Mrs. Crosby.

It is said the trial court committed error in admitting the testimony of Mrs. Crosby as to conversations between

herself and her husband regarding this transaction. From a careful examination of the record we find the only conversations testified to by her, between herself and her husband, had no bearing upon the main question at issue, —that is, whether the loan was from her to him or from her to the firm, and hence no error resulted from admitting that evidence.

Plaintiffs in error also contend that even if it should be found that Thomas G. Crosby, on behalf of his firm, promised that the money should be re-paid to defendant in error, yet that promise was not within his implied authority as a member of the firm. This contention has been answered by what has been already said. It is assumed that the only promise to re-pay it was made by Mr. Crosby alone; but the evidence tends to show that what he did was with the knowledge and sanction of the other members of the firm and the money was received by the firm.

It is insisted that the court erred in sustaining the demurrer to the pleas setting up the Statute of Frauds. The first plea is, that the promise declared upon was not to be performed within one year; and the second, that whatever promise was made by the defendants was a promise to answer for the debt of Mr. Crosby. As to the first, the demurrer was properly sustained, on the ground that the contract declared upon was fully and completely performed upon the part of the plaintiff, and nothing remained to be done by the defendants but to pay the money. (*Curtis* v. *Sage*, 35 Ill. 22.) We do not understand, under the rule in this State, that the Statute of Frauds can be interposed as a defense where the contract is fully performed on the part of the plaintiff,—in other words, the Statute of Frauds cannot be availed of for the purpose of perpetrating a fraud. As to the second plea, the demurrer was properly sustained, for the reason that it is in no way responsive to the allegations of the declaration. The declaration is, that the promise was made by

192—19

the firm to plaintiff; and if she failed to establish that allegation she could not, of course, recover. The defendants could not, by a plea of this kind, raise a collateral issue on the case.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*