Alfred Vischer, Jr., Appellant, v. Dow Jones and Company, Inc., Appellee.

Gen. No. 44,559.

Opinion filed February 10, 1950. Rehearing denied March 13, 1950. Released for publication March 15, 1950.

WALTER HAMILTON, of Chicago, for appellant.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, for appellee; HERBERT C. DE YOUNG and JAMES A. C. KELLY, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff appeals from a decretal judgment of the Superior court of Cook county striking his complaint and dismissing the cause for want of equity. Upon the instant appeal the only defendant before the court is Dow Jones & Co., Inc.

This is the second appeal in this case (see *Vischer v. Dow Jones & Co., Inc.*, 325 Ill. App. 104). Upon the first appeal it appeared that plaintiff filed his complaint in equity against Dow Jones & Company, Inc., a New York corporation, et al.; that defendant Dow Jones & Company, Inc., filed a limited and special appearance for the sole purpose of moving to quash the purported service upon it, on the ground that it was not present in the State of Illinois and subject to the jurisdiction of the Superior court; that the chancellor sustained said defendant's motion to quash. Plaintiff appealed. We reversed the part of the judgment of the Superior court which quashed the summons against Dow Jones & Company, Inc., and remanded the cause with directions to the trial court to overrule the motion of said defendant to quash the summons and to dismiss the suit against it, and for further proceedings not inconsistent with our opinion.

Sometime after the cause was reinstated in the trial court plaintiff filed his "first amended complaint." The complaint is a very lengthy one and we will state only its salient features. It alleges that on June 5, 1929, one G. S. Conger was superintendent of the electrical department of Dow Jones & Company, an unincorporated joint stock association, and one J. F. Nickel was the assistant superintendent; that on said date plaintiff

619

was employed as a draftsman at $100 per week to make drawings of mechanical improvements which Conger and Nickel were attempting to originate whereby the news ticker of Dow Jones & Company could be made to write an average of sixty words per minute instead of the twenty-five words per minute it then wrote; that Conger and Nickel originated the ideas for said attempted improvements and plaintiff made the parts' drawings; that prior to January 17, 1930, plaintiff had evolved a method to make high speed news tickers; that Conger and Nickel had made no progress; that it was considered necessary by Kenneth C. Hogate, Vice-President of Dow Jones & Co., who was in charge of the matter, to have a high speed ticker to write an average of sixty words per minute by March 1, 1930, in order to meet competition with the Western Union Telegraph Co.; that the latter company had then come out with a high speed news ticker and Hogate said that Western Union Telegraph Co. informed him that it was going into the news ticker business in competition with Dow Jones & Co. unless by March 1, 1930, Dow Jones & Co. leased news tickers from it at the price of $35 per ticker per month; that this figure of $35 per ticker per month is $29 per ticker per month more than the cost of operating the high speed news ticker invented by plaintiff; that Conger and Nickel were then seeking to speed up the old news ticker to operate at high speed and thus to obviate the paying of such rental to Western Union Telegraph Co.; that plaintiff first learned of such demands of Western Union Telegraph Co. for such rental on January 17, 1930, and of the urgency to devise a high speed news ticker writing an average of sixty words per minute by March 1, 1930, when Hogate told him of it when he hired plaintiff for Dow Jones & Co.; that on January 17, 1930, Hogate sent for plaintiff and asked him if he had solved the problem of such a high speed news

ticker and asked him to embody his ideas in a model machine by March 1, 1930, which plaintiff agreed to do; that plaintiff, during his evenings and after working hours, devised and built such a machine by that date and on test it wrote sixty-seven words per minute and by later tests wrote ninety-three words per minute; that on March 7, 1930, plaintiff was employed by Dow Jones & Company, through an oral agreement with Hogate as chief engineer and superintendent, to head a new department to be known as "Ticker Manufacturing Department" to produce high speed news tickers; that plaintiff's duties involved the supervision of the design and production of the new high speed news ticker and the design, layout and procurement of all facilities necessary to place the ticker in commercial production; that plaintiff and Hogate agreed that plaintiff's compensation for such services should be $10,000 per year, payable monthly, the term of such payments to be during the life of any letters patent that might issue for said news ticker; that plaintiff was to assign all patent applications for such improvements theretofore made by him and any others in news tickers thereafter made by him during such employment to said Dow Jones & Company or to such person, firm or corporation as it might designate; that on November 21, 1930, defendant, Dow Jones & Co., Inc., was organized under the laws of New York and assumed the benefits and obligations of said employment and patent contract of plaintiff with his consent and continued to pay plaintiff said salary and royalty of $10,000 per year; that plaintiff assigned his five patent applications for improvements on said tickers to his employer or to such persons, firms and corporations as it designated; that on November 15, 1932, Dow Jones & Co., Inc., through Hogate, wrongfully discharged plaintiff without any cause or provocation, such discharge to take effect January 1, 1933, without

reassigning or causing to be reassigned to him or offering to reassign to him the unexpired portion of the patent rights so assigned by plaintiff; that plaintiff executed and delivered assignments of United States patent applications on any high speed tickers invented before and after the entry by him into said contract to persons, firms and corporations designated by defendant; that all of said applications were made between August 28, 1930, and December 17, 1932, and that United States letters patent were issued pursuant to said applications; that prior to March 7, 1930, Hogate represented to plaintiff that he did not remember said Dow Jones & Company's ever discharging anyone; that some employees of said association had worked for it as long as forty years; that it was one happy family; that Hogate was a personal friend of plaintiff's brother; that his brother had recommended Hogate to plaintiff as a man of sterling character, whose business word was good; that plaintiff had been impressed by the high standing and reputation of Dow Jones & Company in the business world throughout the country; that as a result of such representations, such recommendation and such reputation plaintiff on March 7, 1930, had every confidence and trust that said Dow Jones & Company would carry out its oral agreement, and relying upon such representations, recommendation and reputation plaintiff entered into said agreement orally, and pursuant thereto assigned applications for letters patent from time to time as they were prepared and presented; that at the time of the making of the oral agreement on March 7, 1930, and at the time of the execution and delivery of each of said assignments, a confidential relation existed between plaintiff and Dow Jones & Company and its successor; that at the date of such contract Dow Jones & Company had the intention of having plaintiff tool and establish a plant for the production of tickers embodying the

improvements and inventions theretofore and thereafter to be made by plaintiff, superintend the production of all the tickers embodying such inventions required by it and its subsidiaries for leasing to customers, amounting on the average to 1,000 tickers, and then to discharge plaintiff; that Dow Jones & Co., Inc., had the same intention when it succeeded to the property and obligations of its predecessor and on November 15, 1932, carried out such intention by wrongfully discharging plaintiff; that plaintiff is now the owner of all the equitable interest in said five patents and each of them except a certain joint patent in which he is the owner of the equitable one-half interest; that the court should decree that defendants and each of them assign to plaintiff what interest each of them has in each of said patents except the said one-half interest in said joint patent and each of said defendants should jointly and severally account to plaintiff for all his damages and severally for the profits made by each of defendants individually by leasing of devices embodying any of such inventions (except portions thereof embodying said joint patent) from January 1, 1933, to date of final judgment in this case and from royalties therein paid defendant Dow Jones & Co., Inc., and to defendant The Financial Press Companies of America; that defendants and each of them should be enjoined pending hearing of this case from disposing to any person, firm or corporation of any right each may hold under said patents and each of them except in said joint patent and permanently from leasing such tickers and allowing present lessees of such tickers to use the same and from manufacturing any devices embodying any of said patents hereafter; that defendants and each of them should set forth fully a just and true account of the rents and royalties obtained from each such tickers leased or licensed by them from January 1, 1933, to date of hearing and the expense of

services connected with the operation of such machine, the cost of such machine and any other item of expense properly chargeable to such machine. The complaint prays, *inter alia,* that defendants, their agents, etc., be enjoined from transferring any right, title or interest they may have in the five patents issued to plaintiff; that defendants be decreed to hold in trust for the use of plaintiff any interest they had in said patents; that they be decreed to set forth a just and true account to plaintiff and pay to him what, if anything, shall appear upon said account to be due him.

Defendant Dow Jones & Co., Inc., a New York corporation, filed a motion to strike the amended complaint and dismiss the suit for want of equity, upon a number of grounds. It is unnecessary to state all of them, as defendant, in its brief, states the grounds upon which it relies in support of the order entered by the chancellor wherein he sustained defendant's motion, struck the complaint, and dismissed the suit for want of equity.

Plaintiff strenuously contends that the chancellor's action was entirely unjustified and that plaintiff was grievously wronged thereby. In its brief, in support of its position that the decretal judgment should be sustained, defendant contends: ''I. The amended complaint fails to state a cause of action. II. The claimed contract of employment between plaintiff and Dow Jones & Company is subject to the Statute of Frauds. III. This suit is barred by *laches.*'' Upon the oral argument counsel for defendant stated that defendant relied principally upon points II and III, and we will, therefore, consider said points first.

The contention of defendant *in re* the Statute of Frauds is that ''we have an oral contract set forth, the performance of which is to embrace the life of letters patent. The duration of a patent is 17 years and since the agreement contemplates several patents,

not all of which presumably would be obtained at the same time, the actual period of the agreement is more than 17 years," and, therefore, the contract is subject to the Statute of Frauds. Plaintiff first answers this contention as follows: "Plaintiff's claim is not barred by the Statute of Frauds because the agreement was for employment of Vischer from March 7, 1930 until patents were applied for on his inventions and if applications are allowed until the end of the patents. It was possible that the Patent Office would reject the patent applications within a year. Where there is a possibility that an employment contract may be performed within a year, Statute of Frauds does not apply"; that "the term of the employment and for use of the patents, if any, depended on whether such patents were issued by the Patent Office"; that if the applications were rejected within a year plaintiff's employment would terminate in a year; that there was this possibility; that the agreement was made in New York, was to be performed in that State, and the law of that State governs as to the applicability of the Statute of Frauds. Plaintiff cites in support of his position *Harvey v. J. P. Morgan & Co.,* 2 N. Y. S. 2d 520, 529, where the court states:

"In the leading case of the *Rochester Folding Box Company v. Browne,* 55 App. Div. 444, 66 N. Y. S. 867, affirmed, 179 N. Y. 542, 71 N. E. 1139, it was held that a parol agreement which does not, by its terms, extend for any definite time, is not void under the statute of frauds. The test of enforceability under this statute is directed to the time of performance and not to the time of the incurring of the obligation under which performance is to be made (*McCabe v. Green, Executor of Estate of Constable,* 18 App. Div. 625, 45 N. Y. S. 723); if full performance such as the parties intended could possibly, at the time of the making of the contract, be completed within a year, no matter how un-

likely or improbable that might be, the alleged contract was not within the statutory ban. (*Blake v. Voight,* 134 N. Y. 69, 31 N. E. 256, 30 Am. St. Rep. 622; *Warren Chemical & Mfg. Co. v. Holbrook,* 118 N. Y. 586, 23 N. E. 908, 16 Am. St. Rep. 788.)''

Plaintiff also cites *Fredenburg v. Fredenburg,* 288 N. Y. S. 377, which follows the same rule.

██ Plaintiff further contends that if it be held that the Illinois Statute of Frauds applies, the rule in this State is the same as in New York, and cites in support of his contention *Fraser v. Gates,* 118 Ill. 99, 112, where the court states that the case was not affected by the Statute of Frauds, for two reasons: ''. . . *Second, although the agreement was not expected to be performed within a year, yet, by reason of peculiar circumstances, it might have been performed within the year.* Browne on Statute of Frauds, secs. 275, 276, *et seq.*'' (Italics ours.) That opinion was written by Chief Justice Scholfield. The rule in the *Fraser* case was followed in *Radomski v. The E. R. Stege Brewery,* 172 Ill. App. 308, 312; *Hulse v. Hulse,* 155 Ill. App. 343, 348; *Hills v. Hopp,* 287 Ill. 375, 380, 381; *Regan v. Grady,* 343 Ill. 423, 427, 428; *Osgood v. Skinner,* 111 Ill. App. 606, 617, 618. Plaintiff concedes that all of the States do not follow the New York and Illinois rule. We think that the New York and Illinois rule applies to the facts of this case. However, there is another good reason why the Statute of Frauds does not apply to this complaint: In *MacDonald v. Crosby,* 192 Ill. 283, 289, the court states that ''the Statute of Frauds cannot be availed of for the purpose of perpetrating a fraud.'' The complaint alleges that defendant at the time of making the agreement had no intention to fulfill it, and such an intention is the basis of fraud. In *Howard v. Howe,* 61 F. 2d 577 (certiorari denied by the U. S. Supreme Ct., 289 U. S. 731), the court states (p. 579):

"Nor can it be successfully maintained that fraud may not under any circumstances be based upon the nonperformance of promises. If such promises are made to induce the fraud, if they induce one to change his status to his damage, he may seek the relief of one defrauded. It is only essential that the evidence disclose that they were fraudulent in their inception, were made in bad faith, with the intention to deceive and were the inducing cause of the detrimental change in his condition made by the complaining party in reliance thereon. 12 R. C. L. 257, 260, 261; *Davids v. Davids,* 333 Ill. 327, 164 N. E. 662. We believe that the doctrine stated is properly applicable to the facts here."

 See, also, *Luttrell v. Wyatt,* 305 Ill. 274, where the court held that equity will regard as a fraud a mere promise relied upon by the complainant and to his damage where the subsequent conduct of the promisor raises a presumption that the contract was fraudulent in its inception and shows that he had no intention of carrying out his promise and when the promise was accompanied by false representations to induce the complainant to act. In view of the allegations of the complaint we think it would be a grave injustice to plaintiff to sustain the instant contention of defendant. But even if the Statute of Frauds applies to the instant agreement, that fact would not justify the *dismissal* of plaintiff's complaint, wherein plaintiff seeks, *inter alia,* to recover back the value of unexpired patents and an accounting for the use of the patents since January 1, 1933, or to compel the retransfer to him of patents and patent rights with accounting of profits and damages since January 1, 1933.

 As to point III, that this suit is barred by *laches,* defendant states that plaintiff's cause of action purports to be based upon an alleged oral contract made with Dow Jones & Company on March 7, 1930;

that if Dow Jones & Company was guilty of any fraud which induced the making of that contract it occurred on that date and plaintiff was fully apprised of it when he was discharged on November 15, 1932; that this suit in equity was not filed until February 4, 1941, which was more than eight years after the discovery of the alleged fraud, and defendant contends that under the law of Illinois and the foregoing facts plaintiff's suit was barred by *laches*. In 30 C. J. S. Equity Sec. 116 (pp. 531, 534), it is stated: "Moreover, although there are some cases apparently holding to the contrary, the rule supported by the weight of authority is that delay in asserting a right does not of itself constitute *laches*. Thus the delay will not bar relief where it has not worked injury, prejudice or disadvantage to defendant or others adversely interested . . . ." Numerous authorities are cited in support of the text. Our Supreme court has followed the foregoing rule in many cases. To cite a late one: In *Brandt v. Phipps,* 398 Ill. 296, 313, the court states: "Mere delay in asserting a right does not constitute *laches* but it must also appear that the party so claiming has been injured or prejudiced by the delay. (*Rogers v. Barton,* 386 Ill. 244; *Baumrucker v. Brink,* 373 Ill. 82.)" This Division of the court, in *Motel v. Andracki,* 299 Ill. App. 166, 172, followed the rule stated in *Brandt v. Phipps, supra.* Defendant realizes the force of the foregoing rule and argues that it is reasonable to conclude *from the allegations of the complaint* that defendant has been prejudiced by the delay in filing the complaint; that plaintiff's claim rests upon a parol agreement and therefore the lapse of time and frailty of human memory may cause the truth concerning the transaction to be lost, and that "the grim reaper" may have "removed one or more witnesses to material facts." These are mere conjectures as to what *might* develop upon a trial of the

cause, but plaintiff's case was dismissed upon a motion to strike, and it would be idle to argue that it could be reasonably concluded from the allegations of the complaint that defendant *was injured or prejudiced by the delay.* From the allegations of the complaint it appears that the delay worked, and is still working, to the great advantage of defendant. If upon a trial of this cause it appears that defendant was injured or prejudiced by the delay, defendant will then have a right to urge the defense of *laches.* As stated by our Supreme court in *Cross v. Janes,* 327 Ill. 538, 546: *"Laches* is governed largely by the facts and circumstances present in each case." (See, also, *Einsweiler v. Einsweiler,* 390 Ill. 286, 292.) What facts, if any, would constitute *laches* under the facts and circumstances in this case we need not now decide. That defendant has not been seriously concerned over the march of time appears from the following: The complaint was filed February 4, *1941,* nine years ago, and counsel for defendant by skillful pleading has prevented a trial of the cause upon the merits. We hold that the defense of *laches* interposed to plaintiff's complaint is without any merit.

We have considered the technical arguments in support of defendant's contention that the amended complaint fails to state a cause of action and in our judgment the contention is devoid of merit. Technical criticism of the complaint cannot becloud certain salient and important allegations of the complaint, viz., that defendant by false promises (fraud) employed plaintiff for the life of the patents at a compensation of $10,000 a year and caused plaintiff to assign to defendant or its designates his five valuable patents, which defendant required to meet the competition of the Western Union Telegraph Co., and that when defendant became satisfied that plaintiff's news ticker was a success it discharged him without just cause and

without reassigning or offering to reassign to him his patent rights or to compensate him in any way for the use of the patents. That defendant by its wrongful acts could thus enrich itself, and plaintiff being denied his day in court, does not appeal to our sense of justice. That equity affords relief under circumstances akin to the circumstances of the instant case, see *Howard v. Howe, supra.*

The decretal judgment of the Superior court of Cook county is reversed, and the cause is remanded with directions to the chancellor to order defendant to answer the complaint within a reasonable day, and for further proceedings not inconsistent with this opinion. We feel impelled to state that nine years have elapsed since the complaint was filed and that there should be a speedy trial of this cause.

*Decretal judgment reversed, and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.