M. M. GOINGS and ETHEL DORA GOINGS, Respondents, v. THEODOSIA SHAFER, et al., Appellants.

In the Kansas City Court of Appeals, June 11, 1923.

1. **PARTITION: Object Sought Thereby Stated: Parties: All Persons Having an Interest Should be Made Parties so That Entire Title Shall Pass and Future Controversies be Avoided.** In suits for partition of land, the object sought is to make a division of the

land or the proceeds of its sale in severalty, and to settle all equities, but the courts are careful that all persons having an interest shall be made parties to the suit, to the end that the entire title shall pass and future controversies be avoided.

2. ———: Judicial Sale: Fraud: Evidence Held Sufficient to Warrant Finding of Fraud in not Disclosing to Purchaser Existence of Interested Heir not Made a Party to Partition Proceeding, Entitling Purchaser at Sheriff's Sale to Return of Part of Purchase Price. In an action for return of part of purchase price by purchasers at sheriff's sale, pursuant to order of court in partition proceedings, where purchasers relied upon allegations contained in petition on file therein that the parties thereto were the sole owners of the land, believing the same to be true, and there was an outstanding interest in an heir not made a party thereto, held that evidence was sufficient to afford a basis for a finding of fraud against the court and the purchaser of the lands, in that the parties to the proceedings withheld from the court and purchasers knowledge they had of the existence of said heir who was not named in the petition nor disclosed to the purchaser.

3. ———: ———: ———: Co-tenants: Co-tenants, Defendants in Partition Proceedings, Who Shared in Proceeds of Sale, Cannot Avoid Liability to Purchaser on Theory They Did not Join in Petition. Where petition in partition proceeding alleged that parties thereto were sole owners of lands and did not disclose the existence of an interested heir who was a necessary party thereto, in an action by purchaser at sheriff's sale for return of part of purchase price because of money expended in purchase of said heir's outstanding interest, co-tenants who were parties defendant in the partition proceeding, but who shared in the proceeds of the sale, to which they were not entitled, cannot avoid liability for the fraud on the theory that they did not join in the petition for partition.

4. ———: ———: ———: Caveat Emptor: Rule of Caveat Emptor Does not Apply Where the Element of Fraud is Present. The rule of caveat emptor that the purchaser in partition proceedings cannot recover for a defect in the title, or for any act of omission on account of which his title is destroyed or diminished, does not apply where the element of fraud is present.

5. ———: Testimony of Purchaser as to Purchaser as to Purchase Price of Land, Held Sufficient. In an action by purchaser at sheriff's sale, pursuant to order of court in partition to recover for fraud of parties thereto, a portion of purchase price paid for outstanding heir's interest, testimony of the purchaser as to purchase price of the land that he "paid well for it," held sufficient in view of the fact that such testimony was not denied.

Goings v. Shafer.

6. ————: Damages: Proof That Owners Offered to Take Back Land from Purchasers at Sheriff's Sale, Who Claimed Fraud in Sale Price, Held Immaterial and not Determinative as to Question of Purchasers' Damages. In an action by purchasers at sheriff's sale for return of part of purchase price for fraud on part of parties to partition proceeding, proof that said parties, who were owners of the land, offered to take back the land from purchasers, *held* immaterial and not to determinative of the question as to whether purchasers were damaged.

7. **SUBROGATION:** Purchasers at Sheriff's Sale, Who Discovering Outstanding Interest in an Heir Whose Interest in the Land was Concealed by Co-tenants, Held Subrogated to All of the Rights of Said Heir as Against Co-tenants. Where purchasers at sheriff's sale, pursuant to partition proceedings, discovered after sale that there was an outstanding interest in an heir, not made a party thereto, and of which they had no knowledge, and who purchased the interest of such heir in the proceeds of the sale and in the land, *held* they were subrogated to all of said heir's rights therein.

8. **PARTITION:** Where Co-tenants Concealed Existence of Interested Heir in Partition Proceedings, and After Sale of Lands, Received from Proceeds Thereof Money to Which They Were not Entitled in Equity and Good Conscience, Held Required to Restore the Same. In an action by purchasers at sheriff's sale for return of part of purchase price for fraud of co-tenants, who concealed in partition proceeding the existence of an interested heir, and who received from the proceeds of the sale, money to which they were not entitled in equity and good conscience, should restore it.

Appeal from Circuit Court of Henry County.—*Hon. C. A. Calvird*, Judge.

AFFIRMED.

*W. H. Hallett* and *J. A. Silvers* for appellants.

*M. T. January* and *Ewing & Ewing* for respondents.

ARNOLD, J.—This is an equity suit for the return of part of the purchase price of 160 acres of land sold at partition sale, May 13, 1919, by the sheriff of Vernon county, Missouri, pursuant to an order of the court.

The suit at bar was instituted in the circuit court of Vernon county and by change of venue was taken to

Henry county where it was tried. The land sold, as above stated, was owned by one Harriet E. Lyons, at the time of her death August 30, 1885, and her husband, H. C. Lyons, and was located in Vernon county, Missouri. The record discloses that on July 25, 1885, Harriet E. Lyons had executed a warranty deed conveying the land to' her four children, viz., Theodosia, Julia, Lillie and Charles, and that at the time of the execution of said deed she was a married woman and was not joined by her husband in said deed.

The record shows that Harriet E. Lyons was the mother of a fifth child, a daughter named Ella, who, in September, 1883, ran away from home and married one Robert P. Riley. After her said marriage this daughter, Ella, was never seen again by her mother or by any member of the family. To this daughter was born on July 25, 1884, a son, William P. Riley. Ella Lyons Riley died in the State of Kansas, June 13, 1885.

Charles, son of Harriet E. Lyons, died in Vernon county, Mo., in 1889, and H. C. Lyons, husband of Harriet, died in the same county in 1918. After the death of Harriet, H. C. Lyons married a second time and to this marriage three children were born, viz., Bessie, Beulah and Edwin. Lillie, daughter of H. C. and Harriet E. Lyons, married one Henry C. Swope; to them nine children were born. The death of Lillie occurred prior to that of her father. Harriet E. Lyons and her son Charles each left an estate. William P. Riley never appeared to claim any part in either of these estates. A number of the defendants herein are minors and all were represented by guardians in the litigation.

The record discloses that by reason of the estrangement of the family on account of the marriage of Ella, as above stated, the son, William P. Riley, never was in touch with the family. There was testimony tending to show that the Lyons family, husband, wife and children, knew that Ella had given birth to a son. There was no positive proof that he was not living at the time

the partition suit was filed, and there was .abundant proof that his father was living at the time, in the State of Washington. The testimony tends to show that the petitioners in that suit knew, at least in an indefinite way, that William P. Riley and his father both were living in Washington at, or near, a place calley Riley. William was not made a party to the partition suit. The petitioners named therein alleged that ''Harriet E. Lyons died intestate in Vernon County, Missouri, leaving surviving her H. C. Lyons, her husband, the plaintiffs, Theodosia E. Shafer and Julia A. Compton, Lillie M. Lyons and Charles Lyons, daughters and son respectively, of the said Harriet E. Lyons, as her ' only heirs at law.'' Further it is alleged that after the death of her mother, Lillie M. Lyons, who was then married to Swope, conveyed all her title as the heir of her mother to her father, H. C. Lyons, and that Julia A., then Compton, on March 6, 1891, also conveyed to her father, H. C. Lyons, all her title as heir of Harriet E. Lyons; that Charles Lyons died intestate, leaving as his only heirs at law, his father H. C. Lyons, his sisters, Theodosia E. Shafer, Julia A. Compton, and Lillie M. Lyons, and Bessie M. Null and Beulah Sample, his sisters of the half blood; that after the death of Charles Lyons, Mrs. Compton and Mrs. Swope conveyed to their father all of their interest in the lands of their brother Charles.

Further, the petition in the suit for partition alleged the death of H. C. Lyons who died intestate in 1918, leaving surviving him as his only heirs at law, his widow Mary E. Lyons, Theodoria E. Shafer, Julia A. Compton, Bessie Null, Beulah Sample, and Edwin G. Lyons, daughters and son respectively, Anna L. Swope, Eugene Swope, Forest Swope, Helen Swope, Harvey Swope, Clarence Swope, granddaughters and grandsons, respectively.

At the date of the filing of the partition suit, the estate of H. C. Lyons was being administered. Upon the pleadings and the evidence the court directed the dis-

tribution of the net proceeds of the sale as set out in the petition. The court ordered the lands sold and the proceeds thereof divided among the heirs, as set out in the petition. The plaintiffs in the suit at bar purchased the land at sheriff's sale for $13,830 cash, and were given a sheriff's deed therefor.

It appears that there were two or more affidavits attached to the abstract of title furnished the purchasers at sheriff's sale, which indicated that William P. Riley was yet living, and that he was entitled to his share in his grandfather's estate. This and some other flaws in the title induced plaintiffs to file suit to quiet title. William P. Riley was included in this suit as party defendant. He was located at Tacoma, Wash., by counsel for the petitioners in the partition suit, and through said counsel, he successfully set up his claim. Plaintiffs, thereupon, purchased his interest in the estate for the price and sum of $3000. Shortly thereafter, plaintiffs brought this suit in equity asking to be subrogated to the rights of William P. Riley, to assert a claim against these defendants, asking separate judgments against each for such sums as they had severally received in excess of what they would have received had William P. Riley been made a party to the suit in partition.

It is alleged in the petition that Theodosia E. Shafer and Julia Compton, the sole plaintiffs in the original partition suit, had falsely and fraudulently stated in their petition that they and the defendants therein were the sole owners of the land, and that plaintiffs relied upon said allegations, believing them to be true.

This suit was instituted on the theory that fraud was perpetrated both on plaintiffs and the court by the false allegations in the petition for partition. The answer of defendants Theodosia Shafer and Julia A. Compton was a general denial and an allegation that prior to the final judgment in the partition suit the plaintiffs were advised that it was the belief of defendants that William P. Riley had died in infancy and that defendants had

no absolute knowledge as to whether or not said William P. Riley was living at the time of the sale of the lands in question, and that notwithstanding said knowledge plaintiffs allowed the final order and judgment and the distribution of the proceeds to go unchallenged. The answer further charges that prior to the final judgment in said partition suit, and after plaintiffs had acquired knowledge of William P. Riley, as aforesaid, defendants offered to release plaintiffs from their bid and purchase, and to pay the purchase price themselves, and to be substituted as purchasers instead of plaintiffs; but that plaintiffs refused to accept said offer and insisted on proceeding to final judgment and distribution. Several of the defendants filed separate answers in the form of general denials. These included the Swopes and Mary E. and Edwin C. Lyons.

The reply to the answer of Theodosia Shafer and Julia Compton was a general denial.

The judgment was for plaintiffs in the total sum of $3195.64, and against the defendants in proportion to the amounts distributed to each of them. Motions for a new trial were duly filed on behalf of each defendant and were overruled by the court. Defendants appeal.

It is urged in support of this appeal that a sale in partition imports no warranty of title, but that the rule of *caveat emptor* applies. Plaintiffs do not dispute this statement as applied to partition sales in general, but do contend that where the element of fraud enters as in the case at bar, the rule does not apply.

Defendants cite numerous cases wherein the lands sold were encumbered by mortgages or other liens of which the purchaser was not informed and it was held there was no remedy. In those cases the charge of fraud or misrepresentation was not made and the parties misrepresented nothing. They were all heirs as tenants in common and held only such title as their ancestors held. In this case the partition petition alleged that the parties plaintiff and defendant were the only heirs, while

the testimony is substantial to the effect that said plaintiffs and their attorneys had actual knowledge that William P. Riley was an heir, of which fact the purchasers of the land were in ignorance.

In Hiles v. Rule, 121 Mo. 248, the defect of parties appeared upon the face of the petition. In the case at bar, it appears upon the face of the petition that there were no other heirs. In suits for the partition of land, the object sought is to make a division of the land, or the proceeds of its sale in severalty, and to settle all equities. The courts are careful that all persons having an interest shall be made parties to the suit, to the end that the entire title shall pass and future controversies be avoided. At p. 256, et seq., in the Hiles case, the court said:

"Our statute, section 7135, provides that 'every person having an interest in such premises, whether in possession or otherwise, *shall* be made a party to such petition.' Under this statute, and the common-law practice in equity, this court has properly held that no judgment in partition should be made, when it appears that parties, who are not before the court have an existing vested interest in the subject-matter of the suit. In such case the parties interested should be brought in, or partition should be denied. [Dameron v. Jameson, 71 Mo. 97; Estes v. Nell, 108 Mo. 177; Thompson v. Holden, supra; Parkinson v. Caplinger, 65 Mo. 290.]"

The statute, section 1997, Revised Statutes 1919, is mandatory, providing:

"The petition shall particularly describe the premises sought to be divided or sold, and shall set forth the names, rights and title of all parties interested therein, so far as the same can be stated, including persons entitled to the reversion, remainder or inheritance, and of every person who, upon any contingency, may be or become entitled to any beneficial interest in the premises."

"The petition must set forth the right and title of each party interested." [Forder v. Davis, 38 Mo. 107; Rogers v. Miller, 48 Mo. 378.]

Section 1998, provides: "Every person having any interest in such premises, whether in possession or otherwise, shall be made a party to such petition." [See, also, Fogle v. Pindell, 248 Mo. 65, 154 S. W. 81; Johnson v. Johnson, 170 Mo. 34, 70 S. W. 241.]

In the case at bar, as stated above, plaintiffs had no knowledge of the existence of William P. Riley, or of his rights in the estate of his grandfather and uncle, while the testimony shows that the defendants herein, Theodosia Shafer and Julia Compton knew at the time of the filing of the suit in partition and the sale of the land, that their sister Ella had borne a son, and the inference is strong that they had knowledge that this son was alive. We think the evidence sufficient to afford a basis for a finding of fraud against the court and the purchasers of the lands, in that they withheld from the court and from the purchasers of the land, the knowledge they had of the existence of an heir unnamed in the petition filed in the partition suit.

It is urged, as a second assignment of error, that a purchaser at an execution sale in this State is in the position of one who receives a quit-claim deed. We have decided this point in our discussion of assignment No. 1, above. Next, it is charged that false and fraudulent representations made at a partition sale by the parceners or tenants in common will not affect his co-tenants, where he was not acting as their agent or representative, citing Matlock v. Bigbee et al., 34 Mo. 354. The evident object in urging this point is to protect the co-parceners who did not join in the petition for partition, but who were, in fact, defendants. We cannot accept this theory as logical, when such co-tenants shared in the proceeds of the fraud. They received funds to which they were not entitled.

As a further charge of error, it is insisted that a purchaser at a partition sale acquires no title until confirmation of the sale is made by the court, and that he has no right to be heard on motion to confirm the sale. We

hold this rule does not apply in the case at bar, since it was not shown 'that plaintiffs had any information upon which to base opposition to confirmation. The testimony tends to show that plaintiffs had no information of the existence of William P. Riley until after the confirmation and distribution of purchase money.

As assignment No. 5, defendants insist that, as the rule of *caveat emptor* applies to sales in partition, the circumstances must be very exceptional if they can exist at all, where the purchaser can sustain an action to recover for a defect in the title, or for any act of omission on account of which his title is destroyed or diminished.

The rule is well stated and it applies, except where the element of fraud is present, as in the case at bar. [Owsley et al. v. Smith's Heirs, 14 Mo. 152; Cashion v. Faina, 47 Mo. 133.]

Finally defendants urge that it will be presumed that the conduct of defendants was not fraudulent and that the burden of proof was on plaintiffs to show conclusively that the alleged fraudulent representations were relied upon by plaintiffs so that they were misled to their injury. Plaintiffs make no attempt to deny this plain statement of the law, and it remains therefore to be determined whether the proof clearly meets this requirement. We think it does. As stated above, the proof shows that defendants knew of the birth of William P. Riley to their sister, Ella, and knew that he was probably living. The information that there was a missing heir was communicated to counsel for plaintiffs in the partition suit (defendants herein), by Miss Kate Wilcox, Administratrix of the Estate of H. C. Lyons, prior to the sale and distribution. It cannot be doubted, therefore, that defendants had this information and yet permitted plaintiffs to purchase the land at its value.

Plaintiff M. M. Goings testified as to the purchase price of the land that he "paid well for it." This is the only testimony on the point offered by either side. It is sufficient, however, not having been denied. It is

urged by defendants that they offered to take the land from plaintiffs at the price they paid for it, but we think this is immaterial, and not determinative of the question as to whether the plaintiffs were damaged. The case seems to have been tried upon the theory that there was a constructive trust established in the acceptance and retention by defendants of that part of the sale price of the lands belonging to William P. Riley; and as plaintiffs purchased of Riley his interest in the proceeds of the sale, they are subrogated to his rights therein. This rule applies to the other recipients of the proceeds of the sale besides the plaintiffs in the partition suit.

It was held in Clifford Banking Co. v. Commission Co., 195 Mo. 262, l. c. 289, et seq. (citing 1 Perry on Trusts (5 Ed.), sec. 211):

" 'So property obtained by one through the fraudulent practices of a third person will be held a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such a person accepts the property, he adopts the means by which it was procured;' or, as Lord Chief Justice WILMOT said, 'Let the hand receiving the gift be ever so chaste, yet if it comes through a polluted channel, the obligation of restitution will follow it.' " [See, also, York v. Farmers Bank, 105 Mo. App. 127, l. c. 138; Harrison v. Murphy, 106 Mo. App. 465.]

We have carefully read the record and briefs herein, and while the judgment of the trial court is not binding on us, being an equity case, yet such finding is entitled to much weight in framing our conclusions. Defendants received money to which they were not entitled, and in equity and good conscience, they should restore it. We think the trial court properly found for plaintiffs and the judgment therefore is affirmed.

All concur.