RISS & COMPANY, INC., APPELLANT, v. J. L. WALLACE, RESPONDENT.—
195 S. W. (2d) 881.

Kansas City Court of Appeals. May 13, 1946

*Trusty & Pugh, M. D. Campbell, Jr.* and *Guy Green* for appellant.

982

*Homer A. Cope, Cope & Hadsell, L. V. Copley* and *Walter A. Raymond* for respondent.

984

SPERRY, J.—Riss & Company, a corporation, plaintiff, filed a petition in two counts, the first for replevin of motor tractors claimed to have been leased to defendant, J. L. Wallace; and in the second count judgment was sought for damages to the vehicles and for an account. To this petition defendant filed answer as follows: (a) to count one he filed a general denial coupled with a counterclaim for $8750, purchase price for the equipment described in the replevin suit, as actual damages, and for $15,000 punitive damages; (b) to count two defendant filed general denial and a counterclaim for $16,723.50, claimed to be due him, and unpaid, on a contract for hauling.

On trial in circuit court defendant's counterclaim to plaintiff's count one was stricken on motion. The court directed a verdict for plaintiff on count one, on the counterclaim to count two, and for at least nominal damages for plaintiff on its count two. Defendant appealed to the Supreme Court where the judgment was affirmed except as to plaintiff's count two, as to which it was held that error was committed in directing a verdict for nominal damages. The judgment was reversed and the cause remanded. [Riss & Company v. Wallace, 171 S. W. (2d), 641.]

When the cause was reached for retrial, plaintiff stood on its count two, to which defendant then filed a general denial, coupled with an amended counterclaim in two counts. Plaintiff filed motions to

dismiss, and to strike both counts of defendant's amended counterclaim, which motions were overruled. At the close of evidence plaintiff dismissed its count two, the only remaining count of its petition, and moved for a directed verdict, which motion was overruled. Verdict and judgment were for defendant on both counts of his amended counterclaim; but after motion for new trial was sustained as to count one, it was dismissed. This appeal, then, is by plaintiff from a judgment in favor of defendant on count two of his counterclaim, in the amount of $3000 actual and $4000 punitive damages.

The controversy grows out of a transaction whereby plaintiff, who is in the truck transportation business, sold seven tractors (designed and used to pull loaded trailers) to defendant on mortgage payments, which were eventually made, and leased same back under a contract whereby they were to be used by defendant in transporting goods for plaintiff as directed. Plaintiff never delivered to defendant certificates of title to said tractors. The contract was twice renewed and was terminated on notice, as provided in the contract, after 21 months. Defendant thereafter mortgaged the tractors to a bank, which foreclosed the mortgage and took possession of the trucks.

The material part of defendant's counterclaim, the only pleading now in this case, is as follows:

". . . . that plaintiff is now and at all times mentioned herein, was, engaged in the business of hauling general merchandise for hire; that plaintiff maintained its chief office and place of business at No. 124 West Fourth Street, in Kansas City, Jackson County, Missouri; that on April 30, 1937, defendant entered into a contract or agreement in writing with the plaintiff to purchase from the plaintiff certain motor trucks and equipment, including the equipment described in Count I of plaintiff's second amended petition, and to pay certain charges, all in the total sum of $10,233.50; that a true copy of said contract and agreement has been heretofore attached to defendant's answer and counterclaim and marked 'Exhibit A,' and by reference, is made a part of this answer; that under said contract or agreement said motor trucks and equipment were to be paid for as follows:

"1. By a down-payment of $3,750.00 as of the date of the execution of said agreement.

"2. By the payment of the further sum of $250.00 as of June 1, 1937; and

"3. By the payment of the balance of $6,233.50 in ten equal payments of $623.35 each, which amount was included in a note in the principal sum of $7991.80, dated April 30, 1937, and secured by chattel mortgage of same date on certain property, including said motor trucks and equipment described as aforesaid.

"Defendant further states that he paid the said total sum of $10,233.50, including the purchase price of said motor trucks and equipment described aforesaid in the sum of $8750.00; that defendant

did each and everything required of him to be done to entitle him to a delivery of the Missouri certificates of title to said motor trucks and equipment to defendant without any liens, claims, or charges of any kind whatsoever; that although requested by defendant so to do, plaintiff failed or refused, at the time of the delivery of said motor trucks and equipment, to deliver to the defendant certificates of title thereto, as required by law, but promised to do at a later date, that on many occasions thereafter defendant demanded that plaintiff perform its legal duty in such respect and deliver to the defendant certificates of title to said motor trucks and equipment, but plaintiff, instead of complying with such demands, again promised defendant that plaintiff would deliver the certificates of title at a later date; that plaintiff told defendant that assignments of said certificates of title to defendant had been signed and fully executed; that on occasions when defendant became insistent that plaintiff deliver such certificates of title, plaintiff threatened to cancel his hauling contract with plaintiff, which was the means of his livelihood, and threatened to repossess and take away the equipment so sold him; that plaintiff well knew that it was violating the laws of the state of Missouri in so failing to assign and deliver said certificates of title to defendant as of the date of the purchase of said motor trucks and equipment, but, nevertheless, wrongfully, intentionally, willfully, fraudulently, and unlawfully failed to assign and failed and refused to deliver to defendant said certificates of title at any time; that by reason of plaintiff's wrongful conduct as aforesaid, defendant, could not and did not acquire legal title to said motor trucks and equipment under the laws of Missouri; that defendant believed and relied upon assignments of the certificates having been executed as stated by plaintiff and defendant did not know that plaintiff, in bad faith, had failed to execute assignments to said certificates of title and did not intend to deliver said certificates of title to said motor equipment to this defendant, although defendant had fully and finally paid for the same, until plaintiff instituted the above action for replevin in this court on February 28, 1939; and by reason thereof defendant was without any defense to plaintiff's action for replevin, as set forth under Count I of plaintiff's third amended petition herein; that as a result of plaintiff's said replevin action in said Count I, plaintiff obtained a final judgment in the Supreme Court of Missouri on or about May 4, 1943 for possession of said motor trucks and equipment, and obtained possession of said motor trucks and equipment, and wholly excluded defendant from possession and ownership thereof; that by reason of the aforesaid willful, fraudulent. and unlawful conduct of plaintiff in falsely and fraudulently stating assignments of said certificates of title had been executed and in failing and refusing to deliver certificates of title to said motor trucks and equipment to the defendant, although plaintiff was fully and finally paid therefor, the defend-

ant has been deprived of the money paid by him on the purchase price of said motor trucks and equipment in the sum of $8750.00; that defendant is entitled to interest at the rate of six per cent per annum from the date of the final payment made by defendant to plaintiff on said note and chattel mortgage, to-wit: January 13, 1938; that because plaintiff's conduct, in so falsely stating assignments of said certificates of title had been executed to defendant and in failing and refusing to deliver certificates of title to said motor trucks and equipment to defendant, as required by the laws of the state of Missouri, was willful, malicious, fraudulent, and unlawful, defendant is entitled to recover punitive damages in the further sum of $15,000.00.

"WHEREFORE, defendant prays judgment against plaintiff on this, Count II of his amended counterclaim to Count II of plaintiff's said third amended petition, in the sum of the payments made by him on said contract in the amount of $8750.00, together with interest thereon at the rate of six per cent per annum from January 13, 1938, and for the further reasonable sum of $15,000.00, as punitive or exemplary damages, together with his costs herein incurred and expended."

Plaintiff contends that the counterclaim in this case is substantially the same, as to material averments, as that ruled by the Supreme Court in the former trial. We do not have the former pleading before us but, in the course of its opinion in Riss & Company v. Wallace, *supra*, l.c. 644, the court said:

"The contract set up in defendant's counterclaim to count one is void under the statute, and will not support an action either for its enforcement or for its breach. We understand defendant to concede this, but he strenuously argues that his counterclaim seeks neither enforcement of the contract nor damages for its breach; that it seeks damages for the alleged fraud and deceit of plaintiff in obtaining money by a false promise to deliver the certificates of title. That argument is unsound for two reasons; first, the counterclaim, as already pointed out, is not a defense to the cause of action, to wit, right of possession, set up in count one; second, *the counterclaim does not contain proper averments to recover the sums which were paid on the purchase price of the motor vehicles. Defendant, by his counterclaim, doesnot state that he has tendered or will tender the vehicles back to plaintiff* and, of course, he cannot retain them and also recover the purchase price. By his general denial he denies that he unlawfully detains the vehicles, but by the counterclaim he shows that plaintiff has the legal title while he (defendant) had possession at the institution of the suit. Thus he must mean that the contract set up in the counterclaim justifies his possession and prevents it from being unlawful. That seems to be an attempt to enforce a void contract. We hold that the counterclaim to count one was properly stricken and, as defendant admitted and plaintiff proved legal title by offering the certificates,

the court properly instructed the jury to find for plaintiff on that count. In so holding we do not pass upon the question of whether or not the matter contained in the counterclaim could, *under proper averments,* form the basis of a separate cause of action or be used as a counterclaim against a petition seeking to recover indebtedness." (Emphasis ours).

The court held that the counterclaim did not contain proper averments to recover money paid as purchase price, because it did not state that defendant had tendered or would tender the vehicles back to plaintiff. From an examination of the language of the counterclaim filed in this case, and from what the court said of the counterclaim in the prior case, it is apparent that the pleading before us lacks the essential averments noted by the Supreme Court as necessary to state a cause of action for recovery of purchase price, for money had and money received. So far as this court is concerned that holding becomes the law of the case, unless the pleadings, or evidence, or both, are materially different from what they were in the prior appeal. [Sheppard v. Travelers Protective Association of America, 124 S. W. (2d) 528, l. c. 532; Davidson v. St. Louis-San Francisco Railway Company, 301 Mo. 79, 256 S. W. 169, l. c.❡170.]

Defendant contends, in effect, that what the Supreme Court said relative to defendant not being entitled to recover money paid without renouncing the transaction and tendering back the vehicles, is *obiter dictum* since, it is claimed, the real and only issue before that court was whether or not the counterclaim presented a defense to the replevin action. When a court bases its decision on two or more distinct grounds, each is as authorative as the other and neither is *obiter dictum.* [Casparis v. Fidelity Gas Company, (Tex.) 65 S. W. (2d) 404, l.c. 406.] Be that as it may be; if it is *obiter dictum,* it is, nevertheless, the well settled law. [Ullman v. St. Louis Fair Ass'n., 66 S. W. 949, l.c. 952; Boyer v. Garner, 15 S. W. (2d) 893, l.c. 894.]

The judgment cannot stand, under the pleadings and evidence, on the theory of money had and received. Defendant used the vehicles for almost two years after the contract was made, collected over $112,000 for their use in plaintiff's service under the contract, renewed the contract after having made, as he says, repeated but futile demands for delivery of certificates of title and, after termination of the contract for hauling, he mortgaged the property to a bank, a stranger to the contract out of which this controversy grew. That mortgage was foreclosed. There is no pleading or evidence to the effect that defendant ever rescinded, offered to rescind, or tendered the property back to plaintiff. [Boyer v. Garner, *supra.*]

In his brief defendant says: "Of course if defendant were seeking to 'recover his money paid' he should return, or offer to return, the vehicles unless he showed some other valid excuse therefor. . . But here defendant did not ask the court to return 'his money paid' but

only to give him the value of these vehicles *for which he had fully paid* at the time they were taken from him." He sued for the full amount, $8750, which he alleges he paid for the vehicles; but he claims only to seek recovery for such amount as was paid *that the property was worth when replevined.* He professes to distinguish between a suit for the whole amount of the purchase price or money paid, and one for a part thereof. To the author of this opinion it would appear to be a distinction without a difference. He does not bring his case within the provisions of the doctrine declared in Boyer v. Garner, *supra,* upon which he relies for authority. This was an illegal, void and fraudulent transaction. Both parties participated equally in it. Neither can enforce the contract or sue for its breach. However, defendant could have availed himself of the *locus poenitentiae* and could have recovered his money paid, provided he had repented within a reasonable time while the contract was executory, and providing he had cleansed himself by restoring the other party to his former status. [Boyer v. Garner, *supra.*] This the defendant neither pleaded nor proved.

Defendant contends that the decision in the prior case is not the law of the case because the pleadings in that case are materially different from those in the case at bar. He claims here that he is entitled to recover for fraud and deceit. He made that contention in the Supreme Court and the court ruled against him. However, he contends that the pleadings and evidence in this case are materially different from that in the Supreme Court.

There are some allegations in the present pleadings which were not in the former. It is alleged that defendant promised to deliver the certificates when the equipment was delivered, but failed to do so; and that defendant, thereafter, made repeated demands for delivery of the certificates and, although plaintiff promised to deliver them, he failed so to do. There was evidence in support of such allegations and to the further effect that plaintiff, at the time such promises were made, had no intention to thereafter deliver the certificates. Actions based on fraudulent representations must be predicated on misrepresentations as to material *existing* facts. It is not sufficient that the promisor, when making the promise, had no intention of fulfilling it, if the promise was as to an act to be performed in the future. [Reed v. Cooke, (Mo. *En banc,* 55 S. W. (2d) 275, l.c. 278.]

Allegations of threats on the part of plaintiff to cancel the hauling contract if defendant persisted in demanding delivery of certificates, do not constitute allegations of legal duress because, under the contract, either party had the absolute right to cancel on 30 days notice. The contract itself was not procured by duress or fraud and under the facts here shown, defendant was not compelled, by legal duress, to continue the contract in effect for a period of 21 months. To constitute legal duress the act threatened must be a tortious or wrongful act.

Mere business pressure is not enough. [17 C. J. S. Section 177, page 536; McCoy v. McMahon Construction Co., 216 S. W. 770, l.c. 771, 772.]

Allegations, and evidence in support thereof, to the effect that plaintiff told defendant that the certificates had been executed when, in fact, they had not been, are of no legal effect. The transaction was void because certificates of title were not *assigned and delivered* when the vehicles were delivered. [Section 8382, Subsection (c), Revised Statute Missouri 1939.] The fact that the certificates were, at that time, assigned and acknowledged, or were not assigned or acknowledged, is not material. To have been effective they must have been delivered. [Mathes v. Westchester Fire Insurance Company, 6 S. W. (2d) 66, l.c. 68.]

Comparison and analysis of the allegations contained in the counterclaim ruled in the prior case, and in this case, leads us to conclude that the counterclaim in the instant case contains no material allegation not contained in the former. The Supreme Court has indicated in the prior case that the counterclaim there considered failed to state a cause of action in fraud and deceit or in money had and received. We rule likewise but, in so doing, we do not rely wholly on what was said in Riss & Company v. Wallace, *supra*, but also rely on other controlling decisions of the Supreme Court.

For the reasons above stated the trial court erred in overruling plaintiff's motion for a directed verdict, filed at the close of evidence.

The judgment should be reversed. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed. *Bland, P. J., Dew, J.*, concur; *Cave, J.*, dissents.