Grace WHITE, Dorothy Bennett Brooks, William A. Bennett, Lee Bennett and Gerald Bennett, Appellants,

v.

Walter L. MULVANIA, Executor of Estate of Mary Bennett, Deceased, Howard Wenger, Executor of Estate of Mary Bennett, Deceased, in Iowa, Joseph Lionel Smith, Cinthia Ann Smith, Saint Vincent Home, Harriett Garrett, John Garrett, John Gude, Clara Jean Gude, Hugh Gardner, and Alton Vogel, Respondents.

No. 60329.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

Rehearing Denied Jan. 8, 1979.

Joseph L. Flynn, St. Joseph, for appellants.

Theodore M. Kranitz, St. Joseph, Stephen A. Lovejoy, Lincoln City, Or., for respondents.

SEILER, Judge.

This case was transferred here by the court of appeals, Kansas City district, because of the general interest and importance of the question involved and for clarification of the law in light of a possible conflict between its decision and *O'Leary v. McCarty*, 492 S.W.2d 124 (Mo.App.1973).

The case presents two issues. The first is whether plaintiffs have sufficiently pleaded fraud by alleging that the supposed wrongdoer misrepresented his state of mind to a testatrix, with whom he had an unspecified confidential relationship by making a promise to her, on which she relied, which he had *no intention of fulfilling and in fact did not fulfill.*

The second issue arises if the first is resolved affirmatively: whether a constructive trust may be imposed on innocent parties who receive property under a will where the devolution of such property to them was the result of actual or constructive fraud upon the testatrix.

The trial court dismissed the petition. The court of appeals reversed and remanded, as do we.

I.

For the purpose of determining whether a cause of action was pleaded, we assume the facts to be as alleged by plaintiffs in their second amended petition. Plaintiffs plead that Mary Bennett, the testatrix, a resident of Missouri, died January 31, 1975 leaving a will executed January 6, 1972, which devised the residue of her estate to her only child, Lucy Ann Smith, who had died domiciled in Oregon on December 5, 1973, leaving as her heirs two adopted children, the defendants-respondents herein (hereinafter referred to as the defendants).[1]

Plaintiff's petition then asserts:

"That upon the death of Lucy Ann Smith, one Stephen A. Lovejoy, an attorney in the State of Oregon, who had drawn the Will of Lucy Ann Smith and had been named as Executor of her Will, while acting in a confidential relationship, fraudulently advised, counseled and persuaded Mary Bennett to permit him to take custody of said children and to be appointed the Guardian of their estate and obtained her written agreement thereto, and in consideration thereof he would adopt said children without delay and that . . . [they] . . . would no longer be the heirs of Mary Bennett.[2]

---

1. Or.Rev.Stat. § 109.050 (1977) provides:
 "An adopted child bears the same relation to his adoptive parents and their kindred in every respect pertaining to the relation of parent and child as he would if he were the natural child of such parents."

2. This outcome would obtain whether Missouri or Oregon law is applied. The Missouri statute, § 453.090, RSMo 1969 states that
 "When a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents . . . shall cease and determine. Said child shall thereafter be deemed and held to be for every

purpose the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock."
Or.Rev.Stat. § 109.041(1) (1977) provides:
 "The effect of a decree of adoption heretofore or hereafter granted by a court of this state shall be that the relationship, rights and obligations between an adopted person and his descendants and
 (a) His adoptive parents, their descendants and kindred, and
 (b) His natural parents, their descendants and kindred
 shall be the same to all legal intents and purposes after the entry of such decree as if

."That Stephen A. Lovejoy was given custody of said children and was appointed the Guardian of their persons and estates but thereafter, fraudulently failed and refused to comply with his contract and agreement with Mary Bennett stating he would not do so until after the death of Mary Bennett so that said children would inherit from Mary Bennett, but failed to so advise Mary Bennett of his decision.[3]

"That Mary Bennett, by reason of said fraudulent representation, thereafter during the balance of her life believed" that the children were not her heirs and that the portion of her estate directed to be distributed to Lucy Ann Smith would instead go to the plaintiffs, heirs at law of the testatrix if the children had been adopted by Lovejoy, and that "by reason of said fraudulent representations on the part of Stephen ·A. Lovejoy, . . . Mary Bennett, relying upon said false and fraudulent representations, was effectively induced not

the adopted person had been born in lawful wedlock to his adoptive parents and had not been born to his natural parents."

The Restatement (Second) of Conflict of Laws § 290, Comment b (1971) states that in the majority of jurisdictions the right of an adopted child to inherit is determined by the law of the situs of the property if it is real, and the law of the domicile of the decedent at the date of his death if the property is personal. *Mutual Life Ins. Co. of N. Y. v. Benton,* 34 F.Supp. 859 (W.D.Mo.1940) stated that "[T]he status of an adopted child and his capacity to inherit are governed by the laws of the forum authorizing the adoption." *Id.* at 862. However, in 1945, the following statute, now § 453.-170, RSMo 1969, was adopted providing as follows:

"Any person adopted pursuant to the laws of other states of the union, whenever the adopted person's rights are affected or determined by the laws of this state, shall, from the date of said adoption, be deemed and held to be for every purpose the lawful child of its parent or parents by adoption as fully as though born to them in lawful wedlock and such adoption shall have the same force and effect as adoption under the provisions of this chapter, including all inheritance rights."

In *Commerce Trust Co. v. Duden,* 523 S.W.2d 97, 101 (Mo.App.1975) the court of appeals interpreted this statute to make "the prevailing adoption statutes of Missouri applicable to [a] case even though [the child] was adopted pursuant to the laws of" another state.

to change her Will so as to show her true intent and will." ' This resulted in denial to the plaintiffs, kindred of the testatrix's husband who would take if the adopted children were not heirs, of the property which they would have had but for Lovejoy's fraud.[4] Plaintiffs thus pray for imposition of a constructive trust on the property in favor of themselves as Mary Bennett's heirs at law.

## II.

While plaintiff's second amended petition is not a model of clarity, we conclude that upon a fair reading it does allege that Lovejoy was guilty of both actual and constructive fraud upon Mary Bennett, the testatrix. Either type of fraud if proved would entitle plaintiffs to a constructive trust of the property. A constructive trust is available to one who has been denied his right to property because of the wrongful actions of another. *Skidmore v. Back,* 512

3. For the purposes of this case we assume that no adoption took place. A companion case to this one, which asks for a determination of heirs, was remanded for hearing in the circuit court of appeals, *Estate of Bennett,* 555 S.W.2d 692 (Mo.App.1977). The questions presented in it are not before us on this transfer.

4. That Mary Bennett wished the plaintiffs rather than her daughter's children to take her property is clear if we accept plaintiffs' statement of the facts as true. Had the children been adopted by Lovejoy, the testatrix's gift to her daughter would have lapsed, and the plaintiffs would have taken by intestacy. *See* § 474.010(3) RSMo 1969 which provides as follows:

"If there is no surviving spouse or kindred of the decedent entitled to inherit, the whole shall go to the kindred of the wife or husband of the decedent, in like course as if such wife or husband had survived the decedent and then died entitled to the property."

If the testatrix had wanted third parties, other than the plaintiffs, to take under her will, she would have had to change it to include such third parties whether or not Lovejoy adopted her daughter's adopted children. Thus, the fact that she felt no need to change her will once she believed that Lovejoy would adopt the children before her death indicated that she wished the plaintiffs, who would have taken if Lovejoy had adopted the children, to take.

S.W.2d 223 (Mo.App.1974). As is gone into below, the fact that third parties, the children, and not the wrongdoer, were beneficiaries of the fraud does not prevent imposition of a constructive trust.

Plaintiffs asserted a number of grounds for relief below, in addition to their request that a constructive trust be imposed. Both parties, particularly defendants, extensively briefed these issues on appeal.[5] Certain of these issues may become relevant upon remand should the plaintiffs persist in pressing their alternative grounds for relief. However, it is unnecessary for the court to reach these issues for the purposes of this appeal. If any set of facts are asserted which, if proved, would entitle the plaintiffs to relief, the motion of defendants to dismiss the plaintiffs' second amended petition must be denied. *Watson v. Franklin Finance Co.,* 540 S.W.2d 186 (Mo. App.1976). If any of plaintiffs' alternative grounds for relief are sufficient "the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Rule 55.10.

Rule 55.15 requires that all averments of fraud state the circumstances constituting the fraud with particularity. It permits necessary conditions of mind, such as intent, to be averred generally. *Id.* Plaintiffs have stated with barely acceptable particularity the circumstances constituting the alleged promise by Lovejoy. They have also asserted both that after the time he made the promise he stated that he had no intention of fulfilling it, and that there was a confidential relationship between Mr. Lovejoy and the testatrix. Rule 55.05 has been interpreted liberally to give a pleading "the benefit of all inferences fairly deducible from the facts stated", *Hall v. Smith,* 355 S.W.2d 52, 55 (Mo.1962); *Scheibel v. Hillis,* 531 S.W.2d 285, 289 (Mo. banc 1976) for the purpose of permitting a petition to survive a motion to dismiss. We think that, by inference, plaintiffs have averred generally that Lovejoy did not intend to keep his

promise when he made it and thus misrepresented his state of mind at the time he made the promise relied on by Mary Bennett.

Defendants assert that, even if the circumstances of the fraud were well-pleaded, a misrepresentation of a state of mind cannot by itself constitute actual fraud. Rather they say that actual fraud must be predicated on a misrepresentation of "a present or pre-existing fact, and . . . 'cannot ordinarily be predicated on unfulfilled promises or statements as to future events'", *Reed v. Cooke,* 331 Mo. 507, 55 S.W.2d 275, 278 (banc 1932), and "It is not sufficient that the promisor, when making the promise, had no intention of fulfilling it, if the promise was as to an act to be performed in the future", *Riss and Co. v. Wallace,* 239 Mo.App. 979, 195 S.W.2d 881, 886 (1946).

While *Reed* and *Riss* have not been expressly overruled, we find that their application has been narrowed by later cases which hold that state of mind, or intent, is itself an "existing fact", the misrepresentation of which can constitute fraud. *Dillard v. Earnhart,* 457 S.W.2d 666 (Mo.1970); *Wallach v. Joseph,* 420 S.W.2d 289, 295 (Mo. 1967), *cert. denied* 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967); *Musser v. General Realty Co.,* 313 S.W.2d 5, 10 (Mo.1958). To the extent that *Reed v. Cooke* and *Riss & Co. v. Wallace,* hold otherwise, they are no longer to be followed.

### III.

Plaintiffs have also pleaded constructive fraud, alleging that

"Lovejoy, an attorney in the State of Oregon, who had drawn the Will of Lucy Ann Smith and had been named as Executor of her Will, while acting in a confidential relationship, fraudulently advised, counseled and persuaded Mary Bennett to permit him to take custody of said children and to be appointed the Guardian of

---

5. Included were issues such as the standing of plaintiffs to contest Mary Bennett's will, the power of this court to declare an equitable adoption of the children, and the power of the court to declare Mary Bennett's will wholly or partly invalid.

their estate and obtained her written agreement thereto, and in consideration thereof he would adopt said children without delay and that said [children] would no longer be the heirs of Mary Bennett."

We think it was not necessary for the petition to specify whether the confidential relationship alleged was that of attorney-client or some other, for in equity a confidential relationship may be based on "a special confidence reposed on one side and resulting domination and influence on the other . . . with respect to property or business affairs . . . ." *Service Life Ins. Co. of Ft. Worth v. Davis,* 466 S.W.2d 190, 196 (Mo.App.1971).

If such a confidential relationship can be proved at trial, proof of actual fraud is unnecessary. It is well established that the breach of a promise made during such a relationship will be considered constructively fraudulent because of the special reliance present. *Service Life,* 466 S.W.2d at 196; *Swon v. Huddleston,* 282 S.W.2d 18, 25–26 (Mo.1955); G. Bogert, *Trusts and Trustees,* §§ 482, 496 (2d rev. ed. 1978). Of course, plaintiffs will be required to prove at trial both the alleged breach of promise and the existence of the asserted confidential relationship.

### IV.

Plaintiffs have thus alleged sufficient facts which, if proved, could permit the trial court to find actual or constructive fraud by Lovejoy. Assuming that fraud can be proved, the remaining question is whether this fraud can be the basis for imposition of a constructive trust on the adopted children of Lucy Smith.

 As the court of appeals noted, if plaintiffs prevail the children will lose nothing they would have had but for the fraud. Although they did not participate in the fraud, they were unjustly enriched by it. It is long established law that persons have no fixed or vested interests as heirs at law before the death of the testator, *Cox v. Fisher,* 322 S.W.2d 910, 915 (Mo.1959) and that a testatrix need not have a good rea-

son for giving her property to one set of relatives over another set; that it is her property to do with as she wishes, *Clark v. Powell,* 351 Mo. 1121, 175 S.W.2d 842, 847 (Mo.banc 1943). We hold that where, as is alleged here, the testatrix was induced not to change her will due to fraudulent misrepresentations, equity does not permit those who benefit solely because of the fraud to take. In so deciding we express our agreement with the Restatement of Restitution, which states that a constructive trust should be imposed

"[n]ot only where the person who acquires property by will or intestacy is himself the wrongdoer, but also where a third party is the wrongdoer . . . The situation is in substance the same as though the third person had by fraud, duress or undue influence obtained a devise or bequest to himself and had gratuitously transferred it to another."

Restatement of Restitution, § 184, Comment j (1937); *see also id.,* Comment a.

Missouri commented favorably in a different factual context on an analogous formulation of this rule by Perry in *Clifford Banking Co. v. Donovan Commission Co.,* 195 Mo. 262, 94 S.W. 527, 536 (1906), and in *Goings v. Shafer,* 214 Mo.App. 419, 253 S.W. 133, 136 (1923). These cases dealt with suits for money had and received. In *Clifford Banking,* plaintiff's employee wrongly used money belonging to plaintiff to pay a personal debt of the employee owed to the defendant. Plaintiff sued defendant for return of the money. The court noted that equity as well as law supported the plaintiff's right to the money, despite the fact that the defendant took it with no knowledge of the plaintiff's claim to it, citing the following paragraph from J. Perry, 1 Perry on Trusts and Trustees, § 211 (7th ed. 1929):

"So property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured; or, as Lord Ch. Justice Wilmot

said, 'Let the hand receiving the gift be ever so chaste, yet if it comes through a polluted channel, the obligation of restitution will follow it.' " [6]

*Clifford Banking,* 94 S.W. at 536. *See also Goings v. Shafer,* 253 S.W. at 136; *York v. Farmers Bank,* 105 Mo.App. 127, 138, 79 S.W. 968, 971 (1904).

The principle that an innocent third party is not entitled to keep property wrongfully procured for him by another is supported by inference in the case of *Wallach v. Joseph,* 420 S.W.2d 289 (Mo.1967), *cert. denied,* 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967). There a third party, Harold Friedman, fraudulently induced the plaintiffs to execute a deed in favor of Jack Joseph. The court made Joseph a constructive trustee of the property for plaintiffs despite the fact that Friedman, not Joseph, was the wrongdoer. The opinion notes that Joseph was merely a straw party, acting for Friedman, but it also indicates that this fact was not a necessary one for it to impose the constructive trust by concluding that ". . . In any event, under the evidence, [Joseph] must be charged as a constructive trustee of the property because the execution of the deed was induced by the fraud of Harold Friedman." *Id.* at 295, citing Restatement of Restitution, § 167 (1937) and *Clifford Banking.*

█ As mentioned at the outset of this opinion, the court of appeals found a conflict between its decision and that of *O'Leary v. McCarty,* 492 S.W.2d 124 (Mo. App.1973). The latter case involved an action for imposition of a constructive trust where it was alleged that a husband and wife transferred their interest in property held in a tenancy by the entirety to a straw party who then re-transferred it to the husband upon agreement by the husband to execute his will for the benefit of the wife's heirs. Later, however, the lawyer who had handled the transaction unduly influenced the husband to make his will in favor of

others, including the lawyer. The holding of the court of appeals in *O'Leary* was that a constructive trust could not be imposed on the husband's heirs in these circumstances. In so doing, the court wrote as though there could be no constructive trust unless the wrongdoer is either the beneficiary or the alleged trustee. This is too narrow a view. There are instances, as in the present case, where the wrongdoer is a third party. The critical issue is whether the person who was disposing of the property was wrongfully influenced to make a disposition which he did not desire or contrary to what had been agreed upon. In such instance it would be inequitable to permit the person who would take as result of the fraud to prevail. To the extent, therefore, that *O'Leary* is contrary to what is said herein, the *O'Leary* case is no longer to be followed.

### V.

We feel it incumbent upon us to emphasize what is not decided by this decision, as well as what is. We intend no implication as to the merits of plaintiffs' claim. We do not know what actually transpired in Oregon. All that remains to be determined. We go no further at this time than to hold that the plaintiffs have sufficiently pleaded grounds for imposition of a constructive trust to avoid a motion to dismiss on the pleadings. That is, *if* the testatrix were fraudulently prevented from changing her will in favor of the plaintiffs due to the fraud, actual or constructive, of Lovejoy, then the property which devolves to the grandchildren solely as a result of this fraud must be held by them in a constructive trust for the plaintiffs. This result does not mean that we are decreeing, suggesting or advocating an equitable adoption. The question of adoption is irrelevant to our holding except insofar as it was the substance of the fraudulent promise. The grandchildren remain, after imposition of the constructive trust, in exactly

---

**6.** The court would have reached a different conclusion if the innocent third party had given valuable consideration rather than paying off an antecedent debt. *Id.* The cause before us is like *Clifford Banking* in that no consideration was given by the children to Mary Bennett in return for the property.

the same relationship to the testatrix, and to Lovejoy, as before. The only change made is that if the plaintiffs can prove their cause of action, the children will not receive property which was not intended for them and which could only have come to them as a result of fraud, assuming the allegations of the petition to be true. The fact they are children does not *per se* enhance their position or change the applicable law. Had the fraud been some other fraudulent promise which subverted the true will and intent of the testatrix and resulted in the grandchildren's taking only because of fraud, the result would be the same.

■ Nor is it correct to say, as has been suggested, that we are placing a "seal of validity" on a contract to "barter away" the grandchildren. Assuming the facts as pleaded by plaintiffs to be true, Mary Bennett had every intent to disinherit her grandchildren. Such was her right, for grandchildren have no guarantee of inheritance.[7] Assuming what the petition alleges to be true, she was fraudulently induced not to do so by Lovejoy, on whose superior knowledge, purportedly offered in the context of a confidential relationship, she relied. Whether or not such is the fact we do not know at this stage. If, however, the allegations are true, then by imposing a constructive trust we would simply carry out the will of the testatrix to give her property to persons other than her grandchildren, an action which was within her rights.

■ We do not have before us the question of whether there was some sort of contract to adopt between Lovejoy and Mary Bennett or whether, if there was such a contract, it was wise or enforceable. The question is whether Mrs. Bennett had a right to rely on Lovejoy's promise, if he made it. We find that she had such a right for two reasons.

First, if plaintiffs can prove a confidential relationship existed between Mary Bennett and Lovejoy, then she had no independent duty to investigate whether Oregon would otherwise permit the adoption. She had a right to rely on his representation as to both fact and law. *Fredrick v. Bensen Aircraft Corp.,* 436 S.W.2d 765, 770 (Mo. App.1968); *Selle v. Wrigley,* 233 Mo.App. 43, 116 S.W.2d 217, 225–26 (1938) (where it was held that where defendant had represented to plaintiff that he had adopted him, he could not later claim that the plaintiff should have discovered the fraud).

Second, if plaintiffs cannot prove a confidential relationship, but can prove that Lovejoy made the promise to adopt to Mary Bennett without intending to keep it, and that she relied thereon, then the validity or enforceability of such a contract would be irrelevant. Mary Bennett relied on Lovejoy's promise that he would, as a matter of fact, adopt the children. She had no reason to consider whether or not an Oregon court would permit the adoption. "In this connection it should be kept in mind that [plaintiffs do] not sue for breach of the promis[e] [to adopt], but rather complai[n] of them as [the] inducing caus[e] of such fraud as produces a constructive trust." *Howard v. Howe,* 61 F.2d 577, 579–80 (7th Cir. 1932), *cert. denied,* 289 U.S. 731, 53 S.Ct. 527, 77 L.Ed. 1480 (1933). Whether or not such a promise would be enforceable, a promise was made, with no intent of fulfilling it, relied upon, and breached. Although the question whether Lovejoy could in fact adopt the children is one of law, the reality of his willingness to adopt them is a matter of fact. It is on this that Mary Bennett relied. *Cf. Messina v. Greubel,* 358 Mo. 439, 215 S.W.2d 456, 458 (Mo.1948) (relied on statement that corporation was solvent, although could have checked records to learn of liens on real estate, ownership of property by United States, etc.).

■ Additionally, even if it be supposed that Mary Bennett had some duty to ensure that Lovejoy's promise was capable of fulfillment, or that a contract to adopt was permissible, she had fulfilled that duty. Lovejoy was an attorney, executor of her

7. The only persons who cannot be cut out of an estate by will are spouses. The surviving spouse can always elect to take against the will. § 474.160, RSMo 1969.

daughter's will, and according to the petition, was appointed guardian of the persons and estate of the children.[8] She had no reason to believe that a court would not find him a fit parent. Adoption of the children would not be refused on the basis that it would deprive them of an inheritance, for in all events she did not want them to take her property and if no adoption took place it is contended she would have, as she originally intended, changed her will. Thus the adoption was no "scheme" which she had to use to disinherit the children.

From all the facts at her disposal, Mary Bennett was entitled to believe Lovejoy's promise that he would adopt the children. She had no reason to look further. There are two exceptions to the rule that one is not permitted to say that he has been misled as to a matter of law—both of which apply here: where there exists a confidential relationship, and "where one party is possessed or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance of the law to mislead him." *Fredrick v. Bensen Aircraft Corp.,* 436 S.W.2d at 770.

### VI.

On the basis of the foregoing discussion we hold that plaintiffs have sufficiently alleged both actual and constructive fraud and thus have asserted a sufficient basis on which to ground a constructive trust. We, of course, take no position on the merits of the case, but on the basis of the pleadings, the judgment must be reversed and the cause remanded with directions to reinstate the second amended petition.

MORGAN, C. J., and DONNELLY, and RENDLEN, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

ALDEN A. STOCKARD, Special Judge, dissents in separate dissenting opinion filed.

FINCH, J., not participating.

SIMEONE, J., not participating because not a member of the court when cause was submitted.

BARDGETT, Judge, dissenting.

I respectfully dissent. Although I am not familiar with the details of the laws of Oregon relating to adoption, I feel satisfied that under those laws the scheme allegedly proposed by attorney Lovejoy to Mary Bennett whereby he would adopt Lucy Ann Smith's adopted children would, on its face, constitute a fraud on the courts of the state of Oregon and, in my opinion, a fraud upon the children. Plaintiffs' petition itself demonstrates that such adoption would be contrary to the interests of the children and it is inconceivable to me that any court, if advised of the true facts pertaining to and the purpose of the proposed adoption, would order the adoption.

---

**8.** The petition alleges that Lovejoy was appointed guardian of the person and estate of the children and given their custody, facts which we must take as true in our determination of the sufficiency of the petition. The petition says nothing about the adoptive father of the children, presumably Lucy Ann Smith's spouse. The Oregon statutes governing guardianship require notice of a proposed adoption be given, ORS 126.007 (1977) and the parents of a minor are given preference over all others, ORS 126.035 (1977). Subject to this preference the latter statute requires the court to appoint as guardian "the qualified person most suitable who is willing to serve."

While we do not know the ages of the children, the statute also requires that if the child is fourteen years or older, the court shall have due regard for the request of the child as to the guardian.

We do not know from the allegations of the petition why Lovejoy was willing to act as guardian or why the Oregon court appointed him. He may have been acting from selfish motives and trying to get Mrs. Bennett's residuary estate into the guardianship or he may have loved the children and wanted to and been able to care for them adequately. In any event, we know that the Oregon court, according to the allegations of the petition, considered him suitable presumably even over their father. The petition also alleges that Lovejoy obtained Mrs. Bennett's written agreement to his appointment as guardian. In light of the Oregon statutes mentioned above, it seems doubtful that her agreement was at all necessary.

The testatrix had no right to rely upon such a fraudulent scheme being carried out. The testatrix Bennett could have made out a new will or a codicil to the existing one and, by a perfectly legal and proper method, thereby leave the children nothing.

I agree with the dissenting opinion of Stockard, Sp. J., and would affirm the judgment of the circuit court dismissing plaintiffs' petition.

ALDEN A. STOCKARD, Special Judge, dissenting.

I dissent.

This is a roundabout attempt by third party beneficiaries to enforce only a portion of a contract for adoption by seeking to impose a constructive trust on property. In my opinion the alleged contract for adoption between the adoptive grandmother and attorney-guardian should be declared violative of public policy. This court should not place a "seal of approval" upon a contract whereby an adoptive grandmother in effect barters away her adoptive grandchildren for a property consideration; in this case an augmentation of her residual estate.

Also, the petition fails to show good consideration for the contract to adopt which is required in order to have a valid contract. *Niehaus v. Madden,* 348 Mo. 770, 155 S.W.2d 141 (1941). Yet the principal opinion would permit an equitable partial enforcement of that contract by third parties who neither acted nor failed to act to their detriment by relying on the validity of the contract.

Enforcement at law or in equity of a contract to adopt should be refused when the welfare of the children involved would not be promoted, and certainly should be refused when enforcement would be to the detriment of the children. In this case, the majority opinion would permit a constructive trust on property in favor of strangers that would otherwise belong to the adoptive children, definitely to the detriment of those children, without any provision to assure to the children the benefits, if any, of the contracted adoption.

Finally, this is an equitable action. If the plaintiffs, as third party beneficiaries of the adoption contract, have been damaged by the alleged breach of the contract to adopt, they have an action at law for breach of that contract. If it be contended that the measure of damages is the value of the property they did not receive by way of inheritance, and that some or all is real estate resulting in an inadequate legal remedy, this equitable action is still discretionary. I would decline to entertain it and would leave the plaintiffs to their remedy at law.