EDWARD DE PASS, Appellant, v. B. HARRIS WOOL COMPANY.—144 S. W. (2d) 146.

Court en Banc, November 9, 1940.

*Oliver T. Remmers* for appellant.

*Jones, Hocker, Gladney & Grand* and *Lon O. Hocker* for respondent.

1040

CLARK, J.—Appeal from the Circuit Court of the City of St. Louis. The petition alleges that: defendant is a Missouri corporation; plaintiff is a duly authorized and licensed practitioner before the Interstate Commerce Commission of the United States; defendant, through its agent, employed plaintiff to represent defendant for a contingent fee in certain rate reduction cases before the Interstate Commerce Commission; plaintiff performed the services and prays judgment for the amount claimed to be due. The contract, which is referred to in the petition, made a part thereof and attached as an exhibit, indicates on its face that it was entered into in Chicago, Illinois.

Defendant filed a demurrer stating: that the alleged contract calls for services which, under the laws of Missouri, amount to the practice of law; that, as plaintiff does not allege himself to be and in fact is not an attorney at law, such contract is against the public policy of Missouri and our courts will not lend themselves to its enforcement.

The trial court sustained the demurrer. Plaintiff refused to plead further and, judgment being rendered for defendant, appealed.

We shall continue to refer to the parties as plaintiff and defendant rather than appellant and respondent.

Under the constitutional power of the Federal government to regulate commerce among the several states, an Act of Congress has created the Interstate Commerce Commission and given it the right

to prescribe rules of practice before it. [Vol. 10-A Federal Code Ann., p. 417 et seq.] We judicially note that the Commission has adopted rules whereby, under specified conditions, persons other than attorneys at law may be admitted to practice before it. [Vol. 10-A Federal Code Ann., p. 754.] Such rules have the force and effect of law. [Hiatt v. Ry., 334 Mo. 895, 69 S. W. (2d) 627.] Defendant does not dispute the validity of such rules and, by its demurrer, admits that plaintiff has been duly licensed to practice before the Commission. But, while conceding that plaintiff would violate no law by practicing before the Commission, defendant says that the courts of Missouri should not enforce the contract because it calls for services which, under the declared public policy of this State, may not be performed in this State by others than duly licensed attorneys.

As indicating our public policy defendant cites our statute defining the practice of law (Sec. 11692-3, R. S. Mo. 1929, Mo. Stat. Ann., p. 621) and two decisions of this court (Clark v. Austin, 340 Mo. 467, 101 S. W. (2d) 977; Curry v. Dahlberg, 341 Mo. 897, 110 S. W. (2d) 742). The statute provides that none but duly licensed attorneys shall practice law which, in part, is defined as the appearance as an advocate in a representative capacity before "any body, board, committee or commission constituted by law or having authority to settle controversies." In Clark v. Austin, supra, we held in the majority opinion, that the statute is a valid exercise of the police power and confines the practice before the State Public Service Commission to duly licensed attorneys. Curry v. Dahlberg, supra, was a suit on a contract made by two persons neither being licensed to practice law. The defendant, designating himself as a "rate expert" or "commerce expert," employed plaintiff to solicit on a contingent basis claims from shippers against railroads doing *intrastate* business for over-charges under the State statutes. The contract contemplated action, if necessary, both in State and Federal courts. Defendant employed lawyers to bring suits and, as many of the railroads were in receivership, much of the litigation was in Federal courts. We held the contract against public policy and void because it called for the practice of law by unauthorized persons and also because it was champertous.

In both those cases State law only was considered, no question of Federal law being involved. Also, none of the persons complained of had any license whatever to practice either before a court or commission, while in the instant case the plaintiff was duly licensed to practice before the Commission.

On his claim that we have the right to refuse enforcement of the contract, although it is legal for plaintiff to practice before the Commission, defendant cites: 11 American Jurisprudence, secs. 125, 126, pp. 411, 413; Thurston v. Rosenfield, 42 Mo. 474; The Kensington, 183 U. S. 263; Union Trust Co. v. Grosman, 245 U. S. 412; Grosman v. Union Trust Co., 228 Fed. 610; Continental Supply Co. v. Trust

Co., 202 N. W. 404; Campen Bros. v. Stewart, 145 S. E. 381; Pope v. Hanke, 40 N. E. 839; Fox v. Telegraph Co., 120 N. W. 399. The Kensington case involved the question of enforcement in the United States of a contract made in Belgium and all the other authorities cited relate to comity between states of this nation. It may be conceded that, except as otherwise provided by the United States Constitution, the laws of a state have no force beyond its boundary; and that this court is under no compulsion to enforce, against the public policy of Missouri, a contract made in another state although valid where made and valid at the place of performance. That is not the question here. We are now considering the effect of a law of the United States the force of which does *not* stop at the boundary of Missouri. The Constitution of the United States (Art. VI) provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." The Interstate Commerce Act, concededly made in pursuance to the Federal Constitution, authorizes the Commission to hold sessions in any part of the United States. [Vol. 10-A Federal Code Ann., p. 571, sec. 19.] Plaintiff's contract does not designate the place for the performance of his services. If the Commission should hold sessions in Missouri, under his contract and under his license plaintiff could represent defendant, not as a matter of comity, but by virtue of a law which is just as binding on this court as if it had been enacted by our own General Assembly. Therefore, the performance of plaintiff's contract being legal in Missouri, how can we refuse to enforce it as being against the public policy of Missouri?

However, if the law authorized the Commission to meet in the City of Washington only, we would be compelled to reach the same conclusion. This, for the reason that the Interstate Commerce Act is the law in Missouri as well as in other parts of the United States; that Act authorizes plaintiff to practice before the Commission; being authorized to practice, he is authorized to make a contract for such practice; and, necessarily, such contract would be just as valid if made in Missouri as if made elsewhere. To hold otherwise would put us in the untenable position of denying to our own citizens privileges enjoyed by citizens of other states under a valid law of the United States.

Defendant seems to argue that the right to define the practice of law and to regulate persons engaging in such practice falls within the police power of the State. So it does, except insofar as that right does not run *contra* to an Act "made in pursuance" to the Federal Constitution.

It is the province of each state to define the practice of law, and to prescribe the qualifications and regulate the conduct of those who may engage in such practice, either in its own tribunals or out-

side any tribunal. Missouri has adopted a policy that the practice of law and the doing of law business, both in and out of its courts, shall be limited to persons with special qualifications and duly licensed as attorneys. In the main, we think, the Federal government is not out of harmony with our policy. It also confines to lawyers the practice of law in its courts; and, while it licenses some laymen to practice in some of its administrative bodies, it licenses only those whose moral character and technical knowledge fit them for such practice.

Defendant says: "This state may not, by legislation, judicial action or otherwise, interfere with a Federal function by a Federal commission or instrumentality, but nevertheless it may make paramount its own view of public policy .by refusing to enforce contracts it regards as in violation of it." We think there are two answers to that: First, the laws of Missouri do not, and cannot, declare a policy contrary to a law which is binding and valid in Missouri; Second, our refusal to enforce a contract, made legal by Federal law, would "interfere with the exercise of a Federal function" to some extent, and if *all* the states should pursue the same course such contracts would be practically nullified.

In other words, our statute declares a policy against, and makes illegal, the practice by laymen before such boards as come within State jurisdiction; but does not affect, or declare a policy against, any right accorded by valid Federal law. The plaintiff's contract is valid under Federal law and that law is binding on the courts of this State.

Plaintiff cites a Massachusetts case (In re Lyon, 16 N. E. (2d) 74) which, while differing as to facts, we think supports the conclusions we have reached. That was a proceeding to restrain unauthorized persons from practicing law. By paragraphs 9 and 12 of its decree the lower court restrained defendants "from representing creditors in proceedings in bankruptcy and from charging or collecting fees or commissions in or for any action, claim or suit hereafter brought or judgment hereafter to be obtained in the United States District Court." On appeal the Supreme Court, in substance, said: regulation of professions, such as the law, is primarily a matter of State concern; that the police power does not end merely because such matters may become in some way connected with litigation in Federal courts; that such power may be exercised to the full so long as its exercise in no way interferes with any Federal function; that it is the declared policy of the Commonwealth that only members of the bar should practice law or hold themselves out as authorized to practice law, but that "our policy and our statute must yield to any valid rule, order or established practice of the Federal courts ·controlling the practice of law with respect to matters within their jurisdiction." The court further said that if it be true that Federal law permits a layman to make a business of representing creditors to some extent in bankrupt-.

1044

cy, the court would not undertake to interfere with the exercise of that privilege. Paragraphs 9 and 12 of the decree were modified by adding a proviso "that they shall not affect the exercise by the respondents of any privilege which they now possess or may acquire under any statute, rule, order or established practice of the Federal government or its courts controlling methods of practice in respect to matters within Federal jurisdiction."

We hold that the trial court erred in sustaining the demurrer to plaintiff's petition, and the judgment is reversed and the case remanded for trial.

PER CURIAM:—The foregoing opinion by CLARK, J., in Division One, is adopted as the opinion of the Court en Banc. All concur.