**Lloyd W. HACKETT and Lois D. Hackett, Appellants,**

v.

**ST. JOSEPH LIGHT & POWER CO., Respondent.**

**No. WD 40116.**

Missouri Court of Appeals,
Western District.

Oct. 18, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1988.

Frank K. Nichols, St. Joseph, for appellants.

Charles S. Wilcox, St. Joseph, for respondent.

**208**

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellants, Lloyd W. Hackett and his wife, Lois D. Hackett, appeal from an order of the Circuit Court of Buchanan County by the Honorable Merrill M. Steeb sustaining respondent St. Joseph Light and Power Company's Motion For Summary Judgment.

The underlying cause of action was brought as a result of injuries appellant Lloyd W. Hackett allegedly received on November 17, 1981, while working on grain bins located on property owned by J and M Ware, Inc., in Nodaway County, Missouri. High-voltage power lines owned by St. Joseph Light and Power Company ran along side of and in close proximity to the grain bins in question. Appellants represent that as appellant Lloyd W. Hackett was removing an aluminum ladder from the interior of a grain bin the ladder came in contact with a power line thereby injuring him.

The Motion For Summary Judgment was submitted on the pleadings, interrogatories and the depositions of Lloyd Hackett, Lois Hackett and Quentin Burns.

Quentin Burns was an employee of St. Joseph Light and Power Company at the time Lloyd Hackett was injured. At the time of his deposition Burns had recently retired following 38 years of service with St. Joseph Light and Power where he had served first as Safety Director and then Claims Supervisor. Appellants first met Quentin Burns in their home on December 23, 1981, while he was still employed as Claims Supervisor for St. Joseph Light and Power. According to Burns, this first meeting was held with the Hacketts because Lloyd Hackett had been injured and because he (Burns) was investigating the circumstances surrounding the injury. Appellants represent in their brief that this meeting took place while appellant Lloyd Hackett was still in the hospital as a result of the accident herein, but the record is clear that the appellants first met Quentin Burns at their home shortly after Lloyd Hackett was released from the hospital.

Lloyd Hackett was hospitalized from November 17 to December 20, 1981.

In the initial meeting of the appellants and Quentin Burns, on December 23, 1981, there was no discussion of any settlement. Then in May of 1982, appellants contacted Burns and he again came to their home. It was clear that Mr. Burns was a representative of St. Joseph Light and Power. At this meeting settlement of any claims that appellants might have against St. Joseph Light and Power was discussed. The next day Quentin Burns returned to the home of appellants with a check in the amount of $2,000 and a typewritten release. Appellants executed the Release and accepted the $2,000 from Quentin Burns.

The release had no alterations on its face and it was signed by the appellants and witnessed by their daughter, Vanessa Hackett and Quentin Burns. Both appellants had completed twelve years of school. Both appellants admit that in executing the release they understood they would no longer be able to sue St. Joseph Light and Power. The release is set out verbatim as follows:

RELEASE

KNOW ALL MEN BY THESE PRESENTS; That we, Lloyd Wilbur Hackett and Lois Darlene Hackett, husband and wife, Claimants, for and in consideration of the sum of Two Thousand Dollars ($2,000.00) to us paid, the receipt of which is hereby acknowledged, do forever release and discharge St. Joseph Light & Power Company, J and M Ware, Inc., a Missouri corporation, and Curtis Ware, their heirs, executors, administrators and assigns, and all other persons, firms and corporations whomsoever, of and from any and all manner of actions, causes of actions, suits, proceedings, claims, counts, debts, dues, accountings, reckonings, damages, costs, expenses, compensation and demands of every kind and nature which we now have or under any circumstances could or might have against them and specifically, though not restrictive of the general release aforesaid, of and from any and all manner of actions, causes of actions, suits, proceed-

ings, claims, counts, debts, dues, accountings, reckonings and demands, arising out of, resulting from or in any manner pertaining to any and all loss, costs, damage or expense whatsoever, resulting or which might hereafter result to us from an event and/or occurrence which occurred on or about November 17, 1981, on property owned by J and M Ware, Inc., which property is located northeast of Pickering, Missouri, and about one half mile east of Missouri Highway 148.

We promise to refrain from filing any action or suit based upon negligence, products liability or malpractice against any person, firm, company or corporation, whether named in this Release or not, relative to the aforementioned occurrence of November 17, 1981.

We rely solely upon our own judgment without influence by anyone in making this settlement, and fully understand and agree that it fully settles and discharges all claims and damages whatsoever, without being considered as an admission of liability on the part of any of the parties.

In Witness Whereof, we have hereunto set our hands this 28th day of May, 1982.

WE HAVE READ THE ABOVE AND FULLY UNDERSTAND ITS PROVISIONS.

/s/ Lloyd Wilbur Hackett
Lloyd Wilbur Hackett
/s/ Lois Darlene Hackett
Lois Darlene Hackett

Signed in the presence of:

/s/ Quentin G. Burns

/s/ Vanessa Hackett

On December 18, 1984, Lloyd and Lois Hackett filed suit against J and M Ware, Inc., and St. Joseph Light and Power Company. On June 19, 1987, the Hacketts settled with J and M Ware, Inc., dismissing against them with prejudice.

St. Joseph Light and Power filed a Motion for Summary Judgment claiming the release set forth above executed in consideration of the payment of Two Thousand Dollars ($2,000.00) as a complete bar. Light and Power's Motion for Summary Judgment was taken up based upon the pleadings and the discovery which was before the court. On December 9, 1987, the Motion was sustained.

In their pleadings, appellants had requested that the release be set aside on the basis that Quentin Burns made false representations concerning the effect of the release, that Lloyd Hackett suffered from mental incapacity at the time of execution of the release, that there was a mutual mistake of fact by both parties at the time of execution concerning whether Lloyd Hackett would be able to return to work and that the consideration for the release was inadequate.

■ Having admitted to signing the release, appellants have the burden of proving its invalidity at trial. *Gast v. Ebert*, 739 S.W.2d 545, 547 (Mo. banc 1987). The evidence necessary at trial to cancel an instrument on grounds of fraud must go beyond a mere preponderance of testimony and remove all reasonable doubt. *Stein v. Stein Egg and Poultry Co.*, 606 S.W.2d 203, 205 (Mo.App.1980). However, a summary judgment is a drastic remedy and is inappropriate unless the movant has shown that he is entitled to judgment as a matter of law. Rule 74.04(c); *Gast, supra*, at 546. Furthermore, when reviewing a ruling on a motion for summary judgment an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed. *Gast, supra* at 547.

■ Appellants argue for their first point on appeal that Quentin Burns, Claims Supervisor for St. Joseph Light and Power, made false representations of material fact to the Hacketts upon which they relied in executing the release. Lloyd and Lois Hackett both testified in their depositions that Burns represented to them that the release would not bar any claim they might have against J and M Ware, Inc.

To make a submissible case of fraudulent misrepresentation a party must show: (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contem-

plated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987). The establishment of each of these elements is necessary for recovery, and failure to establish any one element is fatal. *Frederick v. Bensen Aircraft Corporation*, 436 S.W.2d 765 (Mo.App.1968).

Even when reviewing the record in the light most favorable to the Hacketts, it cannot be found that the Hacketts had a right to rely on the statement they attribute to Burns, i.e., that the release would not bar any claim they might have against J and M Ware, Inc.

■ It has consistently been held that parties are not entitled to rely on representations of agents and others, absent some confidential relationship or fraudulent inducement tending to convince the releasor that he need not make an independent investigation of the facts. To establish a "confidential relationship", there must be evidence of a special trust with respect to the property or business under consideration even though the relations between the parties may be informal. *Kestner v. Jakobe*, 446 S.W.2d 188, 195 (Mo.App.1969).

Appellants argue that *Gast v. Ebert, supra*, supports their position that material misrepresentations of fact were made that preclude summary judgment.

In *Gast*, the parents of an automobile accident victim brought suit to rescind a release agreement they admitted they executed with defendant's insurer. The parents alleged that the release agreement was the product of fraudulent misrepresentation. Each of the parties filed a motion for summary judgment. The parents filed an affidavit stating that they were told by the defendant's insurer that the release agreement was merely a receipt for monies received to cover their daughter's medical bills. A counter-affidavit of the insurer's claims representative stated that the parents were not told that the release agreement was merely a receipt for reimbursement of medical expenses. The trial court granted defendant's motion for summary

judgment. On appeal the Missouri Supreme Court found that based upon the affidavits there was a genuine dispute as to whether a false, material representation was made.

The distinction between the case at bar and *Gast* is that in *Gast* there was no evidence touching on the elements of fraudulent misrepresentation other than the first element of whether there was a false material misrepresentation that the document was a receipt rather than a release. The other elements of fraudulent misrepresentation were found to be properly pleaded in *Gast* and denied in the answer. There was no other evidence in the record touching upon these elements and therefore they had to be taken in the light most favorable to the plaintiff. The decision in *Gast* turned solely on the first element of whether or not there was a false material misrepresentation. The court found that a genuine issue of material fact remained to be resolved on this point and reversed the order of the trial court which granted the defendant summary judgment.

Contrary to *Gast*, the evidence before the trial court in the case at bar showed the Hacketts did not have a right to rely on the statement they attribute to Burns that the release would not bar any claim they might have against J and M Ware, Inc. The record here shows the appellants knew Quentin Burns represented St. Joseph Light and Power and not J and M Ware, Inc. The appellants initiated the contact with Burns when they wanted to discuss settlement with St. Joseph Light and Power. Settlement was discussed one day and the release executed the next day. The record shows an arm's length business relationship between Burns and the Hacketts. There was no confidential relationship, informal or otherwise, and the Hacketts did not have a right to rely on the statement they attribute to Quentin Burns. Appellants' argument on this point is denied.

■ Appellants further argue that the release should be set aside because Quentin Burns, as Claims Supervisor on behalf of St. Joseph Light and Power, made false representations as to whether or not the

Hacketts had a cause of action against St. Joseph Light and Power and that the appellants relied on these representations in executing the release. In support of this argument, appellants rely on the deposition testimony of Lois Hackett where she states that prior to signing the release the appellants were advised by Quentin Burns that St. Joseph Light and Power Company was not at fault, appellants did not have a case against them and that the money offered was the result of the generosity of St. Joseph Light and Power. Quentin Burns denied making these representations but it must be assumed that they were made since, as previously stated, when reviewing a ruling on a motion for summary judgment this court must scrutinize the record in the light most favorable to the party against whom the motion was filed. *Gast, supra,* at 547.

■ The general rule is that a misrepresentation of law or a misrepresentation as to matters of law will generally not be considered as constituting fraud. *Frederick v. Bensen Aircraft Corp.,* 436 S.W.2d at 770 (Mo.App.1968). There are two well recognized exceptions to the general rule that a misrepresentation of law or as to matters of law does not constitute fraud: (1) where there is a relationship of trust and confidence between the parties, and (2) where one party is possessed or claims to be possessed of superior knowledge of the law and takes advantage of the other party's ignorance to mislead him. *Id.*

The statements that Lois Hackett attributes to Quentin Burns on this point are clearly representations as to matters of law, and as discussed previously herein, the record shows that there was not a relationship of trust and confidence between the parties. The record further reflects that the Hacketts acknowledged the facts showing they dealt with Burns at arms' length. There is nothing in the record to show that Quentin Burns dealt with the Hacketts in anything other than his capacity as a claims representative for St. Joseph Light and Power. Furthermore, Burns did not have, nor is it alleged, that he represented that he had any special knowledge or expertise in the law in an effort to persuade the Hacketts to sign the release.

■ Appellants argue on appeal that Burns had been a claims representative for St. Joseph Light and Power for ten years and he had attended schooling, "to learn what claims were about." This does not show that Burns possessed superior knowledge of the law and no allegation or evidence of the same was presented to the trial court.

The argument that St. Joseph Light and Power is not entitled to summary judgment because Burns told the Hacketts that Light and Power was not at fault, that the Hacketts did not have a case against them and that the money offered was the result of the generosity of St. Joseph Light and Power is denied.

■ In their next point on appeal, appellants argue that the release should be set aside because there is a material issue of fact as to whether Lloyd Hackett possessed the requisite mental capacity when he executed the release. Appellants refer to the deposition testimony of Lois Hackett where she states that Lloyd Hackett's doctor told her that Lloyd had brain damage as a result of the accident. There was no evidence of the nature or the extent of the alleged brain damage, but more importantly, this was hearsay testimony by Lois Hackett in her deposition. This point is denied in that hearsay testimony may not be relied upon either to avoid or support a summary judgment. Rule 74.04(e), *Kersey v. Harbin,* 591 S.W.2d 745, 750 (Mo.App. 1979).

■ The fourth point raised by appellants is that the parties made a mutual mistake of fact when they executed the release as to whether Lloyd Hackett would be able to return to work.

■ A mutual mistake regarding the existence of a fact that goes to the essence of a release will render the release voidable where it later appears that such fact did not exist, but a mutual mistake in prophecy or opinion may not be taken as a ground for recession where such mistake becomes evident through passage of time. *Bogus v.*

*Birenbaum*, 375 S.W.2d 156, 159–160 (Mo. 1964).

In regard to their fourth point, appellants rely on the deposition testimony of Lois Hackett that at the time of entering into the release she felt her husband had recovered from his injuries and that he would be able to return to work by the fall of 1982. Mrs. Hackett further stated in her deposition that her belief that her husband would be able to return to work was a consideration to her in entering into the release. Quentin Burns also testified in his deposition that at the time of signing the release he thought Lloyd Hackett looked like he was able to go back to work but the record does not show that this was a consideration to Burns in entering into the release with the Hacketts. Burns further testified when he first visited the Hacketts in December of 1981, immediately after Lloyd Hackett was released from the hospital, he did not discuss settlement because Hackett had not recovered from his injuries and it did not appear that he was able to return to work. However, it cannot be taken from Burns' testimony that whether or not Lloyd Hackett was able to return to work was a consideration essential to Burns entering into the release.

Even if the issue of whether or not Lloyd Hackett would be able to return to work was taken as a fact rather than a prophecy or opinion, the record does not support a finding that there was a mutual mistake as to this fact which went to the essence of the release from the perspective of all parties. Nothing in the record indicates that Quentin Burns would not have entered into the release had he known that Lloyd Hackett would not be able to return to work. In fact the record supports a finding to the contrary. The Hacketts contacted Burns and wanted to settle. Burns made an offer which the Hacketts accepted and the release was executed. Burns clearly intended, as evidenced by his actions and the clear language of the release, that the release bar any future claims by the Hacketts.

■ It has been held to be a universal principal that a plaintiff has a perfect right to agree to settle for the injuries which are known and for all other injuries which might result and that such agreement is binding no matter how serious the result of the injuries might thereafter turn out to be, provided the agreement was fairly and knowingly made. *Vondera v. Chapman*, 352 Mo. 1034, 180 S.W.2d 704 (1944). The Hacketts contacted Burns some six months after the accident and advised him they wanted to settle their claim, there was no confidential relationship between the parties, they dealt at arm's length, the release was clear and unambiguous and the Hacketts released all claims which they had or could or might have resulting from or which might thereafter result from the accident. The Hacketts acknowledged that they knew in signing the release they would no longer be able to bring any claim against St. Joseph Light and Power.

Appellants' argument that the trial court erred in granting a summary judgment because there was a mutual mistake of fact as to whether or not Lloyd Hackett would be able to return to work is denied.

■ Appellants' final argument on appeal is that the consideration for the release, $2,000.00, was grossly inadequate.

■ It is the policy of the law to encourage freedom of contract and peaceful settlement of disputes. A person under no disability and under no compulsion may convey his property or relinquish his rights for as small a consideration as he may decide. *Vondera v. Chapman, supra* at 705.

Based upon the record as previously set forth and discussed herein, there is no competent evidence of any disability on the part of the Hacketts and the record further reflects that they were not under any compulsion to enter into the release. Appellants' final argument of grossly inadequate consideration is denied.

JUDGMENT AFFIRMED.

All concur.